# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF SUFFOLK, NOVEMBER TERM 1858, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS,

## Commonwealth *vs.* Thomas Mead.

On a trial for manslaughter, evidence that the deceased was a man of great muscular strength, and practised in seizing persons by the throat in a peculiar way, which would at once render them helpless, and shortly take away life, is inadmissible for the defendant. The defendant, for the purpose of impeaching a witness for the Commonwealth, on the trial of an indictment, may prove that he testified differently before the grand jury.

INDICTMENT for the manslaughter of Jeremiah A. Agin. At the trial in the municipal court of Boston, before *Nash*, J., the defendant admitted the killing, but contended that it was in selfdefence. The Commonwealth offered evidence that the defendant and Agin had a verbal altercation, and Agin advanced with his hand uplifted towards the defendant, who then shot him with a pistol. The defendant offered evidence that Agin advanced and seized him by the throat, while Agin's brother

stood near with an uplifted shovel, and Agin was choking the defendant when he fired.

The surgeon who made a *post mortem* examination testified that the *rigor mortis* was very marked. The defendant, to show that he was in danger of his life from the great strength and violence of the deceased, proposed to ask the surgeon these questions : " Was not Jeremiah A. Agin a very strong and muscular man ? Did not the *rigor mortis*, being very marked, indicate that Agin was a remarkably powerful man ? " But the judge excluded them.

The defendant also offered to prove that "Agin was an experienced and practised garroter." Garroting was said to be seizing a person by the throat in a peculiar mode, which in a very short time takes away life, and deprives a person of his powers almost immediately. The judge excluded this evidence ; but allowed the defendant to prove how he was actually seized by the throat, and then to show by experts the anatomical structure of the parts, and the various effects of such seizure and compression on the individual's consciousness, strength, life and system generally.

John Perham, Jr., testified that he saw the defendant shoot Agin, and that Agin was, at the time, between one and three feet from the defendant. To contradict Perham, the defendant called several of the grand jurors who found this indictment, and proposed to show by them that Perham testified differently before the grand jury as to the distance between the defendant and Agin when the pistol was fired. But the judge excluded this evidence, on the ground that it was against public policy and the established practice, to allow grand jurors to be called to detail the testimony of witnesses, given on a partial and *ex parte* examination, and in the grand jury room, for the purpose of impeaching the witnesses at the trial of the indictment. The defendant was found guilty, and alleged exceptions.

*R. Choate & H. F. Durant*, for the defendant, cited, to the point of the admissibility of the evidence of the grand jurors, Rev. Sts. *c.* 136, §§ 12, 13 ; *Commonwealth* v. *Hill*, 11 Cush. 137 ; 4 Bl. Com. 126, note by Christian ; *Sykes* v. *Dunbar*, Selw.

N. P. 1075; *Freeman* v. *Arkell,* 1 Car. & P. 137; *Watson's Trial,* 32 Howell's State Trials, 107; *Scarlet's case,* 12 Co. 98; *Earl of Shaftesbury's case,* 8 Howell's State Trials, 759; *The King* v. *Marsh,* 6 Ad. & El. 236; *State* v. *Broughton,* 7 Ired. 96; *Huidekoper* v. *Cotton,* 3 Watts, 56; *Low's case,* 4 Greenl. 439; *Crocker* v. *State,* Meigs, 127; *United States* v. *Charles,* 2 Cranch C. C. 76.

*G. W. Cooley,* (County Attorney,) for the Commonwealth, cited, upon the same point, *Watson's Trial* and *Low's case,* above cited; *Anon.* Clayt. 84; *McLellan* v. *Richardson,* 13 Maine, 82; *State* v. *Fasset,* 16 Conn. 467; *Imlay* v. *Rogers,* 2 Halst. 347; *People* v. *Hulbut,* 4 Denio, 135; 1 Greenl. Ev. § 250; Archb. Crim. Pl. (Waterman's ed.) 99; 2 Russell on Crimes, (7th Amer. ed.) 616, 911; Whart. Crim. Law, § 508; Davis Pre. 26; 1 Chit. Crim. Law, 317; Rosc. Crim. Ev. (4th Amer. ed.) 19.

BIGELOW, J. 1. Evidence tending to prove the great muscular vigor and strength of the deceased was clearly incompetent. It did not show provocation or that the homicidal act was committed in selfdefence, or was otherwise excusable or justifiable. The issue was not as to the degree of strength and violence which the deceased was capable of exerting, but how severe and aggravated was the assault which he actually committed on the prisoner. *Commonwealth* v. *Hilliard,* 2 Gray, 294. For a like reason evidence that the deceased was in the habit of seizing persons in a peculiar manner by the throat was inadmissible. The defendant was allowed to prove the manner in which the deceased actually assaulted him at the time of the homicide, and this was the only evidence on that point which was relevant or material to the issue.

2. The only other question arising in the case is, whether the testimony of grand jurors is admissible to prove that one of the witnesses in behalf of the prosecution testified differently on his examination before them from the testimony given by him before the jury of trials. As to the competency of such evidence the authorities are not uniform. The weight of them is in favor of its admissibility. On principle it seems to us to be competent.

The reasons on which the sanction of secrecy which the common law gives to proceedings before grand juries is founded are said in the books to be threefold. One is that the utmost freedom of disclosure of alleged crimes and offences by prosecutors may be secured. A second is that perjury and subornation of perjury may be prevented by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused or their confederates to attempt to disprove by procuring false testimony. The third is to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made. To accomplish these purposes, the rule excluding evidence, to the extent stated in *Commonwealth* v. *Hill*, 11 Cush. 140, seems to be well established, and it is embodied substantially in the words of the oath of office which each grand juror takes on entering on the discharge of his duties.

But when these purposes are accomplished, the necessity and expediency of retaining the seal of secrecy are at an end. *Cessante ratione, cessat regula.* After the indictment is found and presented, and the accused is held to answer and the trial before the traverse jury is begun, all the facts relative to the crime charged and its prosecution are necessarily opened, and no harm can arise to the cause of public justice by no longer withholding facts material and relevant to the issue, merely because their disclosure may lead to the development of some part of the proceedings before the grand jury. On the contrary, great hardship and injustice might often be occasioned by depriving a party of important evidence, essential to his defence, by enforcing a rule of exclusion, having its origin and foundation in public policy, after the reasons on which this rule is based have ceased to exist. The case at bar furnishes a good illustration of the truth of this remark. No possible injury to the interests or rights of the government that we can see could happen by a disclosure of the testimony given by the witness before the grand jury, which was excluded by the ruling of the court. Certainly none has been suggested by the learned attorney for the

Commonwealth. On the other hand, it is clear that the rights of the accused might be greatly affected and his peril much increased, if he can be shut out from showing the fact that an important witness against him is unworthy of credit, or that his testimony before the jury of trials is to be taken with great caution and doubt, because on a previous occasion, when called to testify on oath, he had given a different account of the same transaction from that which he has stated in his evidence at the trial. In the absence of a binding authority on this point, we think the exclusion of such evidence is not sanctioned by any rule of law or sound principle of public policy.

*Exceptions sustained.*