THE STATE OF KANSAS v. FRANK M. CAMPBELL.

No. 14,688. (85 Pac. 784.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Right to Speedy Trial—Delay Occasioned by an Appeal.* The terms of court which intervene pending an appeal by the state in a criminal action are not to be counted in determining whether a person under indictment and held to bail is entitled to be discharged under section 221 of the code of criminal procedure (Gen. Stat. 1901, § 5666) because not brought to trial before the end of the third term of court after indictment found or information filed.

2. ——— *Confessions—Statements before a Grand Jury.* Statements and declarations by a defendant in a criminal action in denial of guilt while a witness before a grand jury are not confessions within the rule requiring them first to be shown to have been made voluntarily before they are competent evidence against him.

3. ——— *Testimony in Response to a Subpœna Not Involuntary —Waiver of Privilege.* The fact that his testimony before

The State v. Campbell.

the grand jury was in obedience to a subpœna will not render such statements or declarations involuntary. His rights are protected by his privilege to refuse to answer when the answer tends to incriminate him; and by the failure to exercise his privilege in this respect his statements and declarations become voluntary.

4. —— *Admissions—Voluntary Statements of an Exculpatory Nature.* Voluntary statements of fact made by a defendant in a criminal action, which do not tend to establish his guilt but which are exculpatory in their nature, are competent evidence against him as admissions of a party.

5. —— *Grand Jurors—Disclosure of Evidence Given before Them.* The language of section 5535 of the General Statutes of 1901, providing that "no grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto," is not limited by the provisions of section 5533 of the General Statutes of 1901, permitting such evidence in certain cases.

6. —— *When Proceedings of Grand Jury May be Proved.* The secrecy imposed by the common law and statutes upon the proceedings before a grand jury will not prevent the public or an individual from proving by members of the grand jury in a court of justice what passed before the grand jury, when, after the purpose of secrecy has been effected, such disclosure becomes necessary in the furtherance of justice or for the protection of public or individual rights.

7. STATUTORY CONSTRUCTION—*Statute Adopted from Another State.* The rule that where a statute is adopted from another state the adoption carries with it the construction placed thereon by the courts of that state is a general rule, to which there are exceptions. Where the statute is not peculiar to the state from which it was adopted, but other states have substantially the same statute, which their courts have construed differently, and when the construction placed upon it by the courts of the state from which it was adopted is opposed to the weight of reason and authority, or against the general policy of our laws, such construction will not be followed.

8. CRIMINAL LAW—*Judgment Holding Indictment Sufficient— Law of the Case.* A former judgment of this court holding an indictment sufficient in substance is the law of the case. All questions in this case raised by the motion in arrest of judgment are controlled by the former decision in *The State v. Campbell*, 70 Kan. 899, 79 Pac. 1133.

44—73 KAN.

9. BRIBERY—*Member of Board of Education—Letting of Contracts.* The board of education of a city of the first class is charged with the care and custody of school buildings. A member of such board who accepts money as a bribe to influence his opinion, judgment and action in favor of letting or causing to be let a contract for cleaning school buildings is guilty of bribery, under section 2212 of the General Statutes of 1901, notwithstanding the fact that the board had by resolution referred the matter of cleaning such buildings to the superintendent of buildings, who was an employee but not a member of the board, where it appeared that the member charged with the offense let the contract with the approval of the superintendent of buildings.

10. —— *Proof of Intent with Which Money Was Received.* When the gravamen of the charge is the receiving of money as a bribe to influence the opinion, judgment and action of defendant as a member of such board in causing such contract to be let, testimony showing that the contractor who paid defendant the bribe soon afterward took a similar contract with an individual at a much lower price is material and competent evidence of the intent with which the money was received.

11. —— *Check Cashed by Defendant Competent to Prove Receipt of Money.* In such a case, where defendant is shown to have cashed a check payable to his order for the amount he is charged with receiving, drawn by the person from whom it is charged he received the bribe, the check itself is competent evidence against him to establish the receipt of the money.

12. CRIMINAL LAW—*Calling Witnesses—Names Indorsed on Indictment.* In a criminal action the state is not obliged to place upon the stand every witness whose name is indorsed upon the indictment.

13. —— *Defendant May Not Rely upon Witnesses Subpœnaed by State.* If the defendant desires to rely upon the attendance of witnesses under subpœna by the state, he may notify them and the court of such fact, or may cause them to be subpœnaed in his own behalf. He has no right to rely upon the attendance of a witness merely because the state may have caused a subpœna to issue for such witness.

14. —— *Motion for New Trial—Misconduct of Prosecutor—Effect of Trial Court's Ruling.* Upon a motion for a new trial on the ground of alleged misconduct of the prosecuting attorney in his argument to the jury, affidavits in support thereof were contradicted by the affidavit of the prosecuting

attorney, raising an issue of fact as to what was said in the argument. The ruling of the trial court denying the motion for a new trial will be considered as a finding against the facts alleged in the motion.

Appeal from Wyandotte district court; J. McCabe Moore, judge. Opinion filed May 12, 1906. Affirmed.

STATEMENT.

At the June term of the district court of Wyandotte county appellant was convicted of the crime of accepting a bribe to influence his official action as a member of the board of education of Kansas City. He was sentenced to confinement in the state penitentiary for a period of not less than one or more than seven years. From the judgment he appeals.

The second count of the indictment upon which he was tried charges that appellant, while a member of the board of education of Kansas City, from the sixth ward of that city, and while acting in his capacity as a member of such board of education, and acting under and by virtue of his office as a member thereof, did make, cause and permit to be made a contract with one G. E. Gilhaus, whereby it was agreed that Gilhaus was to clean out a school building and remove the mud, filth and water therefrom, and should receive as compensation therefor the sum of thirty-five dollars per day for the time occupied in performing the work. The count continued:

"And on or about the —— day of August, 1903, in the county of Wyandotte, state of Kansas, the said Frank M. Campbell did then and there unlawfully, feloniously, corruptly and wickedly receive and accept from the said G. E. Gilhaus a large sum of money, to wit, the sum of four hundred and twelve dollars ($412), to the value of four hundred and twelve dollars ($412), as a reward for having given the vote, opinion, judgment and action of the said Frank M. Campbell in favor of letting and causing to be let to the said G. E. Gilhaus the said contract, and as a reward and bribe for having wrongfully and unlawfully

permitted and caused to be let to the said G. E. Gilhaus the said contract so as aforesaid set forth."

When the Kaw river flood of 1903 subsided the lower floors of the school buildings in the Armourdale district were filled with mud and filth to the depth of eighteen inches. Appellant was a member of the board of education, consisting of six members. At a meeting of the board the matter of arranging for the cleaning of these buildings was referred to the superintendent of buildings, one Biscomb, who was not a member of the board. Afterward Biscomb consulted and acted with appellant and C. M. Bowles, another member of the board, in reference to the work and in letting the contract. Appellant lived in the flooded district, and by consent of Biscomb and Bowles took the lead in making arrangements for having the work done. He saw G. E. Gilhaus, who was engaged, under the style of the Gilhaus Manufacturing Company, in doing similar work; and arranged with him to pump out these buildings, at a price agreed upon of thirty-five dollars per day for whatever time was required to do the work. Appellant introduced Gilhaus to Biscomb the day that the work of pumping was begun, and after the buildings were cleaned took the bill of the Gilhaus Manufacturing Company for the work to Biscomb to have the latter certify to it. With some changes the bill was certified by Biscomb, and, on August 3, allowed by the board, and a warrant was drawn for $988.75, payable to the company. It is not shown what date the warrant was received by Gilhaus, but it appears to have been paid some days after its date. On the 11th of August Gilhaus gave to appellant the check of the Gilhaus Manufacturing Company for $412, and on the same day appellant cashed it at the bank upon which it was drawn.

It appeared from the testimony of one witness that some time after the work at the school buildings was completed Gilhaus removed the mud and filth from a

building in the flooded district belonging to the witness, and that the price agreed upon was $7.45 per day.

It was claimed by appellant that the personal transaction with Gilhaus had no connection with the contract for cleaning the school buildings; that the $412 was in payment for a certain steam valve sold by appellant to Gilhaus after the work in the school buildings had been begun. He claimed that he had, some five years before then, invented the steam valve, and had applied for a patent on it, but the patent had never been granted through delays, and that he sold to Gilhaus the valve and the right to use and manufacture it.

*C. C. Coleman,* attorney-general, for The State.
*Hale & Maher,* for appellant.

The opinion of the court was delivered by

PORTER, J.: The appellant contends that the trial court erred in refusing to discharge him, for the reason that more than three terms of court had elapsed since the indictment was filed. The grand jury returned the indictment on January 25, 1904. At the next regular term of the court, which was the March term, appellant's motion to quash the indictment was allowed. The state appealed from that decision, and, on February 11, 1905, the judgment of the court was reversed, and the cause remanded for another trial. (*The State v. Campbell,* 70 Kan. 899, 79 Pac. 1133.) By section 5666 of the General Statutes of 1901 it is provided as follows:

"If any person under indictment or information for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found or information filed, he shall be entitled to be discharged so far as relates to such offense, unless the delay happen on his application or be occasioned by the want of time to try such cause at such third term."

By section 5665 it is provided that if the person indicted be committed to prison and not brought to trial before the end of the second term after the indictment is filed he shall be discharged. The appellant here was admitted to bail immediately after his arrest, and therefore his case falls under section 5666, *supra*. Counsel for the state contends that, the delay having been caused by the erroneous ruling of the district court upon appellant's motion to quash, appellant was himself responsible for it, and it comes within the exception in the statute as one which happened on his application. On the other hand it is argued: (1) That the delay was the result of the state's appeal, not caused by any act of appellant; (2) that the statute having excepted certain delays, all others not mentioned are necessarily excluded.

It is proper here to refer to the history of the statute insuring to a person indicted and imprisoned or held to bail a speedy trial. By considering the evil sought to be remedied we are better enabled to construe the statute. When it was enacted it followed in general terms the provisions of similar statutes in the older states; and in them the evil sought to be remedied was one which the English people had struggled against since before the days of magna charta and the petition of right. It recalls the days of tyranny and despotism, when men were allowed to lie in dungeons for long periods without even an opportunity to know the nature of the charge against them. A speedy trial for all accused persons was one of the things insisted upon by the people of England in the first bill of rights, and English laws have jealously guarded the right from that time. It is provided for in the first ten commandments of the federal constitution, being embodied in the sixth of the ten amendments submitted by the first congress. The guaranty of the federal constitution, however, has been held not to apply to acts of the legislatures of the several states or to state courts.

The State v. Campbell.

(*Fox v. The State of Ohio,* 46 U. S. 410, 12 L. Ed. 213; *Murphy v. The People,* 2 Cow. [N. Y.] 815.)

The same provision or one similar is found in the constitutions of most of the states. It is a part of section 10 of our bill of rights. (Gen. Stat. 1901, § 92.) The statute is for the purpose of carrying into effect this provision of the constitution. It was never intended to apply to the facts in a case like the one at bar. Here there was no laches or delay on the part of the state, within the spirit and intention of the statute. The state was doing all within its power to bring the appellant to a speedy trial. A trial was begun, a motion to quash allowed, and the state appealed. This statute must be construed with the one giving to the state the right to appeal from a judgment allowing a motion to quash the indictment. (Crim. Code, § 283; Gen. Stat. 1901, § 5721.) To hold as appellant contends would deny to the state all benefit of the appeal, which the statute expressly gives. This cannot be the law. The appeal deprived the trial court of power to proceed further until it was determined, and in effect it held in abeyance the provisions of section 5666. Even though appellant had been in prison, unable to furnish bail, while the appeal was undetermined, his right to a speedy trial under this section would have been in no manner infringed.

In *People v. Giesea,* 63 Cal. 345, the same question arose, and the supreme court reversed an order discharging the prisoner. The court said:

"We are of opinion that the case of the defendant does not come within the provisions of the section above referred to. That section has no application where the prisoner has demurred to the indictment, the demurrer sustained, the effect of which ruling had to be gotten rid of by an appeal." (Page 346.)

(See, also, *Marzen v. The People,* 190 Ill. 81, 60 N. E. 102; *People v. Lundin,* 120 Cal. 308, 52 Pac. 807; *Patterson v. State,* 50 N. J. Law, 421, 14 Atl. 125; *State v. Conrow,* 13 Mont. 552, 35 Pac. 240.)

It is claimed that the court erred in allowing members of the grand jury which indicted appellant to testify to statements made by him while a witness before the grand jury. It is contended (1) that before such testimony was competent the state should have shown that the statements of appellant were voluntary, and (2) that members of a grand jury are prohibited by statute from testifying as to what a witness before that body has sworn to, except for the purpose of impeaching his statements made in court or in a case where the witness is being prosecuted for perjury.

In its testimony in chief the state introduced four members of the grand jury which returned the indictment, and proved by them certain statements made by appellant while a witness before the grand jury. These statements were to the effect that appellant made the contract with Gilhaus; that the $412 was paid to him for the steam valve sold to Gilhaus after the contract was made for cleaning the school buildings; that he had invented the valve; and further statements in reference to his efforts to procure letters patent for it, his account of the loss of certain correspondence with his patent attorneys, and as to his procuring from Gilhaus the valve to be used in his defense against the charges made. When this evidence was offered counsel for appellant objected, and the following took place:

Ques. "What did Mr. Campbell say in his examination before the grand jury as to who had employed Mr. Gilhaus?"

Mr. Wooley: "I object to that as incompetent; testimony taken before the grand jury cannot be reiterated by the grand juror. They are attempting to make out their case in chief by hearsay testimony, taken before the grand jury in an *ex parte* proceeding."

The court: "Of course statements by a defendant are different from statements by other witnesses. Was that voluntary testimony, or was he compelled to go there; that might make a difference?"

Mr. Wooley: "He was brought there by subpoena."

Mr. Coleman: "I do not think there is anything in

The State v. Campbell.

the objection.   The witness comes before the grand jury, and he is there as a witness generally in the investigation of violations of the law.   He is supposed to tell the truth."

Mr. Wooley: "No proper foundation is laid here for the introduction of testimony of a grand juror.   It is incompetent, at least at this time."

Mr. Coleman: "It is competent as an admission, if it amounts to one."

The court: "It may have been voluntarily made, and competent, if shown they are not made under compulsion.   He may answer."

Another objection was made, as follows:

Mr. Wooley: "Objected to as incompetent for the jurors to disclose what was said in the grand-jury room; and for the further reason, he says his memory is refreshed by reading notes taken by some one else, and not by some notes he made himself."

These objections can hardly be said to raise the points now urged by appellant, but we prefer to consider them as if they did.   Counsel for appellant urge, first, that before this evidence was competent the state must have shown that "the confession, admission or declaration, it matters not what the statements are called, were voluntarily made or given."   It is insisted that the same rule applies to the admissibility of statements and declarations of a defendant in a criminal action that obtains in reference to a confession.   The distinction between a confession and a statement or declaration is one recognized by the courts and textwriters, because it is a patent distinction in the very nature of things.   The only reason why confessions are sometimes not admitted in evidence is because experience has shown that when made under certain circumstances they cannot be relied upon as true.   It is not out of any consideration for the rights of the party alleged to have made the confession that it is excluded, but simply because of the inherent probability of its untruthfulness unless it first appears to have been made voluntarily, and not under the influence of fear

or duress occasioned by threats or hope of immunity by reason of promises.

"A 'confession,' in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred." (*State v. Reinhart*, 26 Ore. 466, 477, 38 Pac. 822.)

In the case of *State v. Gilman*, 51 Me. 206, it was said:

"The declarations of accused persons are not necessarily *confessions*, but generally, on the other hand, they are denials of guilt, and consist in attempts to explain circumstances calculated to excite suspicion." (Page 225.)

In volume 1 of Wigmore on Evidence, section 821, the author says:

". . . (3) An acknowledgment of a *subordinate fact, not directly involving guilt*, or, in other words, not essential to the crime charged, is not a confession; because the supposed ground of untrustworthiness of confessions is that a strong motive impels the accused to expose and declare his guilt as the price of purchasing immunity from present pain or subsequent punishment; and thus, by hypothesis, there must be some quality of guilt in the fact acknowledged. Confessions are thus only one species of admissions; and all other admissions than those which directly touch the fact of guilt are without the scope of the peculiar rules affecting the use of confessions."

"When a person only admits certain facts from which the jury may or may not infer guilt, there is no confession." (*Covington v. The State of Georgia*, 79 Ga. 687, 690, 7 S. E. 153.)

"A confession of guilt is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred." (*The State v. Red*, 53 Iowa, 69, 74, 4 N. W. 831.)

One of the early cases in point is *Hendrickson v. The People*, 10 N. Y. 13, 61 Am. Dec. 721. The ap-

The State v. Campbell.

pellant was charged with murder. His testimony given before a coroner's inquest previous to his arrest was held to be competent against him. The court there said:

"His statement as a witness was in no respect an admission of guilt. On the contrary, it was a denial of material facts attempted, on his trial, to be established by other witnesses. His testimony was calculated to ward off suspicion from himself, not to attract it toward him." (Page 22.)

It also held:

"The general rule is, that all a party has said, which is relevant to the questions involved in the trial, is admissible in evidence against him. The exceptions to this rule are where the confession has been drawn from the prisoner by means of a threat or a promise, or where it is not voluntary, because obtained compulsorily or by improper influence." (Page 21.)

On the competency of a defendant's admissions generally, see *The State v. Inman,* 70 Kan. 894, 79 Pac. 162. The question whether the statement is voluntary or an involuntary one does not depend upon the fact of the witness's being under a subpœna. (*The State v. Finch,* 71 Kan. 793, 81 Pac. 494.) He may protect himself, if he sees fit, by refusing to answer because the answer tends to incriminate him. (1 Greenl. Ev., 16th ed., § 225.)

In the case of *The State v. Finch, supra,* appellant was charged with manslaughter, and his testimony given at the coroner's inquest in pursuance to a subpœna was held admissible. In that case, as in this, appellant relied upon some expressions in *The State v. Taylor,* 36 Kan. 329, 13 Pac. 550, and the court said: "But that case [*The State v. Taylor*] is not an authority that testimony given under a subpœna and without compulsion and duress is inadmissible." (Page 798.)

The case of *State v. Broughton,* 7 Ired. Law (N. C.) 96, 45 Am. Dec. 507, is a leading one which is in point.

The person on trial had testified before the grand jury that indicted him, and his statements before the jury were held admissible. It was there said:

"The counsel for the prisoner took the further ground here, that it was incompetent to prove the evidence of the prisoner, because it was in the nature of a confession, which, compelled by an oath, was not voluntary. It is certainly no objection to the evidence, merely, that the statement of the prisoner was given by him as a witness under oath. He might have refused to answer questions, when he could not do so without criminating himself; and the very ground of that rule of law is, that his answers are deemed voluntary and may be used afterward to criminate or charge him in another proceeding, and such is clearly the law. . . . But it is altogether a mistake to call this evidence of a confession by the prisoner. It has nothing of that character. It was not an admission of his own guilt, but, on the contrary, an accusation of another person. That it was preferred on oath in no way detracts from the inference that may be drawn from it unfavorably to the prisoner, as being a false accusation against another, and thus furnishing, with other things, an argument of his own guilt. There was, in our opinion, no error in receiving the evidence." (Pages 100, 101.)

In *Hendrickson v. The People,* 10 N. Y. 13, 61 Am. Dec. 721, it was said:

"It is now regarded as a well-settled rule, and recognized in the elementary books, that where a witness answers questions upon examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes. . . . Such answers are deemed voluntary, because the witness may refuse to answer any question tending to criminate him. . . . Independent of any supposed authority, I do not see how, upon principle, the evidence of a witness, not in custody and not charged with crime, taken either on a coroner's inquest or before a committing magistrate or a grand jury, could be rejected." (Pages 27, 29.)

In the celebrated case of *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, defendant at-

tended the inquest in obedience to a subpœna and testified under a threat of punishment for contempt if he refused. His testimony was held admissible notwithstanding he was not advised of his rights when it was given, it being shown that he was not under arrest or formally accused of the crime. The court in the opinion said:

"The law presumes that a party who is called upon to testify as a mere witness knows his rights. He may decline to testify to anything that may tend to incriminate him. This the defendant could have done had he chosen to claim his privilege. Having failed to do so he cannot now complain." (Page 333.)

"A confession receivable in evidence, only after proof that it was made voluntarily, is restricted to an acknowledgment of the defendant's guilt, and the word does not apply to a statement made by the defendant of facts which tend to establish his guilt." (*Taylor v. State,* 37 Neb. 788, 56 N. W. 623, syllabus.)

To the same effect see *The People v. Mondon,* 103 N. Y. 211, 8 N. E. 496, 57 Am. Rep. 709; *People v. Chapleau,* 121 N. Y. 266, 24 N. E. 469; *Wilson v. The State,* 110 Ala. 1, 20 South. 415, 55 Am. St. Rep. 17; *State v. Coffee,* 56 Conn. 399, 16 Atl. 151; *People v. Hickman,* 113 Cal. 80, 45 Pac. 175; *People v. Parton,* 49 Cal. 632.

Tested by these well-established rules, how can it be said that the statements of appellant before the grand jury amounted to a confession? They were made in positive denial of guilt, and for the purpose of exculpating himself. He admitted the making of the contract with Gilhaus; there was no guilt, no crime, no offense in that. He admitted the receipt of $412 from Gilhaus, but if the story he told was true, and this money was in payment of the purchase-price of the steam valve which he had sold to Gilhaus, there was no offense in that. No statement by itself amounted to an acknowledgment of guilt; nor could his guilt be necessarily inferred by the jury from all his statements taken together.

The constitutional right which every man has to refuse to answer any question that may incriminate him seems, in these days of "immunity pleas," to be fully recognized and appreciated. It furnishes ample protection, and does not, in our opinion, require reenforcement by the adoption of the rule contended for by the appellant.

The second ground upon which it is contended that this testimony was incompetent is that the statutory as well as the common-law rules prohibit a grand juror from disclosing the testimony of a witness before that body, except for two purposes: (1) To prove whether the testimony of such witness before the grand jury is consistent with or different from his testimony before the court; (2) upon a complaint against such person for perjury, or upon his trial for that offense.

Section 91 of the code of criminal procedure (Gen. Stat. 1901, § 5533) reads as follows:

"Members of the grand jury may be required by any court to testify whether the testimony of a witness examined before such grand jury is consistent with or different from the evidence given by such witness before such court; and they may also be required to disclose the testimony given before them by any person upon a complaint against such person for perjury, or upon his trial for such offense."

Section 93 of the code of criminal procedure (Gen. Stat. 1901, § 5535) is as follows:

"No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto; nor shall he disclose the fact of any indictment having been found against any person for felony, not in actual confinement, until the defendant shall have been arrested thereon. Any juror violating the provisions of this section shall be deemed guilty of a misdemeanor."

These sections first appear in our statutes in the Laws of 1855 (Stat. Kan. Ter. 1855, ch. 129, art. 3, §§ 15, 17), and have been subsequently reenacted without

The State v. Campbell.

change. It is historical that the territorial legislature of 1855, often referred to as the "bogus legislature," adopted the entire statutes of Missouri, substituting the word "territory" for "state," and making some other slight changes where it was found necessary. These sections had been construed by the supreme court of Missouri in the case of *Tindle v. Nichols,* 20 Mo. 326, decided in January, 1855, and it is now contended that we are bound by the judicial construction placed thereon. In the Tindle case, which was an action for slander, defendant justified, and answered that plaintiff had sworn falsely in a certain matter before the grand jury. On the trial defendant sought to prove by members of the grand jury what the witness had testified. The court held that inasmuch as section 91 (Gen. Stat. 1901, § 5533) specified two classes of cases in which a grand juror may be required to disclose such testimony, it followed that all other cases not enumerated were excluded, and that the words of section 93 (Gen. Stat. 1901, § 5535), "when lawfully required to testify as a witness in relation thereto," had reference only to those two exceptions.

We recognize the force of the rule that where one state adopts a statute from another state it adopts the construction placed thereon by the courts of that state. But this is a general rule, to which there are numerous exceptions. It is not an absolute rule. In *Dixon v. Ricketts,* 26 Utah, 215, 72 Pac. 947, it was said:

"It is a general, though not a binding, rule of statutory construction, that where the provisions of a statute have received judicial construction in one state, and it is then adopted in another state, it is adopted with the construction so given it." (Syllabus.)

(See, also, *Davis Iron Wks. Co. v. White,* 31 Colo. 82, 71 Pac. 384; *Coulam v. Doull,* 4 Utah, 267, 9 Pac. 568.)

Endlich on the Interpretation of Statutes, section 371, says:

"Whilst admitting that the construction put upon such statutes by the courts of the state from which

they are borrowed is entitled to respectful considera-
tion, and that only strong reasons will warrant a de-
parture from it, its binding force has been wholly de-
nied, and it has been asserted that a statute of the kind
in question stands upon the same footing and is sub-
ject to the same rules of interpretation as any other
legislative enactment. And it is manifest that the im-
ported construction should prevail only in so far as it
is in harmony with the spirit and policy of the general
legislation of the home state, and should not, if the
language of the act is fairly susceptible of another
interpretation, be permitted to antagonize other laws
in force in the latter, or to conflict with its settled
practice."

"Thus it has been held that the presumption will not
be indulged where other jurisdictions having the iden-
tical or substantially the same provision had, almost
without exception, given to the language a different
construction long prior to the adoption in question."
(26 A. & E. Encycl. of L. 703.)

It has been held that where the statute is not pe-
culiar to the state from which it was adopted, but other
states have substantially the same statute, which their
courts have construed differently, and when the con-
struction placed upon it by the courts of the state from
which it was taken is contrary to the weight of au-
thority, the decision is not binding. In *Coad v. Cowhick
et al.,* 9 Wyo. 316, 63 Pac. 584, 87 Am. St. Rep. 953, the
court, construing a statute adopted from Ohio, refused
to follow a decision of the latter court holding a judg-
ment not a lien upon after-acquired lands of the judg-
ment debtor. The reasons stated by the Wyoming
court were that the statute under consideration was not
peculiar to Ohio, as other states had similar provisions,
using the identical words or language the same in sub-
stance, and because it considered the decision of the
Ohio court to be opposed to the best reasoning and the
weight of authority. In volume 3 of Current Law,
page 739, it is said:

"*A statute copied from a similar statute of another
state* is presumed to be adopted with the construction

it had already received. The presumption, however, is not conclusive, and where the same provision exists in several states, there is no presumption that the construction of any particular state was in view."

The question before us, however, is not whether this statute was in fact adopted from Missouri, about which there can be no dispute, but whether we should be bound by the Missouri court's interpretation of it. To regard ourselves as bound absolutely by that construction would give it greater weight than if it had been the decision of this court originally, in which case the right and duty of this court to disregard it would not be denied, if upon reexamination it should be found opposed to the better reasoning, in conflict with the great weight of authority, or not in harmony with the spirit and policy of our laws.

The exact question decided in the Tindle case (*Tindle v. Nichols*, 20 Mo. 326) has been the subject of much discussion by the courts. In some of the states there are no statutory prohibitions, and the decisions are placed upon the reasoning deduced from common-law principles; and in some cases it is made to turn upon the peculiar oath required of grand jurors by the statutes. In many of the states the subject is controlled by statute, and provisions almost identical with our statutes are in force. The various statutory provisions of the several states are set forth in a note to section 2360 of volume 4 of Wigmore on Evidence.

From the time the grand jury was first established the law has surrounded its deliberations and all that transpired before it with secrecy. By the common law a grand jury was not permitted to disclose how any witness testified before that body or how any member voted. (12 Viner's Abr. 20.) The grand juror's oath required him to keep the state's counsel, his own and his fellows' secret. The purpose of this requirement has been manifestly, first, to protect the interests of the state by preventing information reaching the accused which might enable him to escape, or induce him

45—73 KAN.

to suborn witnesses to prove the contrary of the charges; second, to protect the members of the grand jury, and leave them free to act without fear of consequences to themselves; and, third, to protect witnesses in the same way. Gradually exceptions to these rules have been allowed, and the first naturally to suggest themselves were those permitting a grand juror to testify what a witness swore to before the grand jury in a prosecution of the witness for perjury, and, again, for the purpose of impeaching the testimony of the witness on a trial of an indictment or in another action. The tendency of modern authorities has been to hold that when the reasons for secrecy no longer exist the ancient rules with reference thereto do not apply, and, in all cases where justice or the rights of the public require it, the facts should be disclosed.

"It was at one time supposed that a grand juror was required by his oath of secrecy to be silent as to what transpired in the grand-jury room; but it is now held that such disclosure, wherever it is material to explain what was the issue before the grand jury, or what was the testimony of particular witnesses, will be required." (Whart. Crim. Ev. § 510.)

"It is equally clear that the jurors were competent witnesses. In *Haak v. Breidenback,* and *Leonard v. Leonard* [1 W. & S. 342], *supra,* the parol evidence was given by jurors, and in the latter case under a special objection and exception; yet the judgment was reversed for the rejection of the evidence. There is no principle of law or rule of policy which in such a case ought to exclude them. It is entirely different from where they are called to impeach a verdict on the ground of their own misbehavior or that of their fellows." (*Follansbee v. Walker,* 74 Pa. St. 306, 310.)

In *Commonwealth v. Mead,* 78 Mass. 167, 71 Am. Dec. 741, it was said: "But when these purposes are accomplished, the necessity and expediency of retaining the seal of secrecy are at an end." (Page 170.) Mr. Wigmore, in volume 4 of his work on Evidence, section 2362, says: "But what are the limits of this

temporary secrecy? The answer is, on principle, that it ceases when the grand jury has finished its duties and has either indicted or discharged the persons accused." In note 6 to the next section, in referring to *Tindle v. Nichols,* 20 Mo. 326, the author characterizes the decision as "clearly unsound, as well as unjust."

The Florida supreme court in a well-considered case (*Jenkins, McRae and Clinton v. The State,* 35 Fla. 737, 18 South. 182, 48 Am. St. Rep. 267), decided in 1895, construed a statute which is in the same language as ours so far as section 93 (Gen. Stat. 1901, § 5535) is concerned. The court held that the provision of the Florida statute permitting a member of the grand jury to testify in the two special cases does not exclude an inquiry in other cases sanctioned by law, when in the discretion of the court it becomes proper to open up such inquiry. The Tindle case is cited, and the court comments upon the absence in their statute of the provision of the Missouri statute which prohibits a member of the grand jury from disclosing any evidence given before the grand jury "except when lawfully required to testify as a witness in relation thereto," but it is apparent that the same result would have been reached if the Florida statute had contained this provision. The Tindle case rests upon the theory that the first section specifies two cases, and that "the bare specification excludes all other cases not enumerated." (Page 328.) The Florida statute, likewise, specifies these same two cases, yet that court refuses to restrict the operation of the statute so as to exclude other cases not mentioned. They said:

"But independent of statutory regulation, it has long been established that it is discretionary with the trial court to permit a grand juror to be examined as to what a witness testified to before the grand jury, when competent and the ends of justice require it, and we do not see that our statutes have changed this rule.'" (Page 810.)

In *Hinshaw v. State,* 147 Ind. 334, 47 N. E. 157, the

appellant was charged with murder. Over his objection a member of the grand jury was permitted to testify to appellant's testimony before the grand jury. The same statute, substantially, as ours was construed, and in addition a statute prescribing a form of oath for the members of the grand jury, which latter provision, it was claimed, added to the inadmissibility of the evidence. It was held:

"The oath of grand jurors that they will not disclose the proceedings given before them does not prevent them from testifying in court as to such proceedings.

"Section 1731, Burns's R. S. 1894 (1662, R. S. 1881), providing that a member of a grand jury may be required to disclose the testimony of a witness examined before the grand jury, 'for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before them by any person upon a charge against him for perjury in giving his testimony upon his trial therefor,' does not limit the right to require grand jurors to testify to the two cases specified." (Syllabus.)

It should be noticed, perhaps, that the form of the grand juror's oath provided by our statute is silent with respect to keeping anything secret. In the case of *United States v. Negro Charles,* 2 Cranch, C. C. 76, 25 Fed. Cas., p. 409 (No. 14,786), it was said:

"Grand jurors may testify as to the confessions made by the prisoner before them, upon oath, when under examination as a witness against another person." (Syllabus.)

"The oath of grand jurors to keep their proceedings secret does not prevent the public or an individual from proving by one of the jurors, in a court of justice, what passed before the grand jury." (*Burnham v. Hatfield,* 5 Blackf. [Ind.] 21, syllabus.)

"The fact that a witness testified before the grand jury, together with his testimony delivered there, may, when otherwise competent, be proved in the trial of an action, when such evidence is required for the purposes of public justice, or the establishment of public rights." (*Hunter v. Randall,* 69 Me. 183, syllabus.)

The Oregon statute is substantially the same as ours. In *State of Oregon v. Moran*, 15 Ore. 262, 14 Pac. 419, the court said:

"The policy of the law generally is that the proceedings before the grand jury are secret. The reasons for this secrecy are many and obvious. It assists them in discharging their important duties; they are not troubled with any questions by the interested or curious; the means and sources of their information are not made public until the trial of the accused, and in many cases the guilty may not know that he is even suspected of crime until he is in custody. But there are cases in which the court is authorized to remove this secrecy, and to require the proceedings before the grand jury to be disclosed.

"It is provided by section 58 of the code of criminal procedure that a member of a grand jury may be required by any court to disclose the testimony of a witness examined before such grand jury, for the purpose of ascertaining whether it is consistent with that given by the witness before the court, or to disclose the testimony given before such grand jury by any person upon a charge against such person for perjury, or upon his trial therefor. . . . It may be conceded that the authorities cited from Missouri and Minnesota are opposed to this view; but it seems clear to us that they are at variance with the great weight of authority on this subject, and, in addition to that, they rest upon a narrow and technical construction of the statutes of those states. The court, therefore, did not err in allowing the grand juror Severson to disclose Moran's testimony before that body." (Pages 273, 274.)

"Upon the trial the defendant offered to prove by a member of a previous grand jury some admissions respecting the cause of action, made by the plaintiff on his examination before the grand jury. The evidence was objected to, and the objection sustained." (*Burnham v. Hatfield*, 5 Blackf. [Ind.] 21.)

"It seems not to be contrary to the policy of the law to allow disclosures by them [the grand jury] of what has been testified to before them, when they are called upon as witnesses in court to speak in relation thereto; but to permit it or not is in the discretion of the court, according to the time and circumstances of each

case. (*Sands v. Robison*, 20 Miss. 704, syllabus, 51 Am. Dec. 132.)

"Where these reasons have ceased to operate, it is the better opinion, contrary perhaps to some cases, but maintained in most, that any revelations of the grand jury's doings which justice demands may be made. The witness may be the prosecuting attorney or a third person present, a grand juror himself, or one who gave evidence before the grand jury, who may be even required to state what his own testimony was." (1 Bish. New Crim. Proc. § 857.)

Mr. Wigmore, after referring to and criticizing the Missouri and Connecticut cases, says:

"There remain, therefore, on principle, no cases at all in which, after the grand jury's functions are ended, the privilege of the witnesses not to have their testimony disclosed should be deemed to continue. This is, in effect, the law as generally accepted to-day. It is, however, not usually stated in such a broad form. The common phrase is that disclosure may be required 'whenever it becomes necessary in the course of justice.' Disregarding a few local exceptions, this is in practice no narrower a rule than the one above deducible from principle." (4 Wig. Ev. § 2362.)

The same author disposes of the notion that the two exceptions contained in many statutes should be held to exclude all others. He says:

"It is now universally conceded that a witness may be impeached, in any subsequent trial, civil or criminal, by self-contradictory testimony given by him before the grand jury. In the same way, a party to the cause, not taking the stand as a witness, may be impeached by his *admissions* made in testifying before the grand jury. The occasional statutory sanction for the former of these uses cannot be construed to prohibit the latter, which goes upon the same reasoning. Nor should any of the ensuing legitimate purposes of disclosure be considered to be obstructed by the statutory omission to mention them—else the integrity of common-law principles would tend to be diminished in direct ratio to the ignorance or unskilfulness of the legislature which attempted in any respect to make a declaratory statute." (4 Wig. Ev. § 2363.)

Appellant, in addition to the Missouri cases, relies upon the old case of *The State v. Fasset,* 16 Conn. 457, which is a leading authority in support of the rule excluding such testimony. This case was decided in 1844, and has been to some extent discredited by that court in the case of *State v. Coffee,* 56 Conn. 399, 16 Atl. 151, decided in 1888. In the later case the court used this language:

"Some of the reasons given for keeping the testimony secret are temporary in their nature, and some do not exist under our practice where the prisoner is before the grand jury; nevertheless the oath and the policy of the law have ever regarded the testimony as among the secrets of the grand-jury room. Not, however, inflexibly so. In *State v. Fasset,* 16 Conn. 457, the court notices two exceptions—in prosecutions for perjury, and in case witnesses testify differently on the trial. Perhaps it would be proper to say that the oath has this implied qualification, that the testimony is to be kept secret unless a disclosure is required in some legal proceeding. It does not seem that the policy of the law should require it to be kept secret at the expense of justice. And so the weight of authority outside of this state seems to be, that where public justice or the rights of parties require it, the testimony before the grand jury may be shown. . . . We make these quotations, not for the purpose of showing what the law is in this state, but for the purpose of showing the principles which prevail in other jurisdictions. The case of *State v. Fasset, supra,* may be regarded as somewhat inconsistent with the broad principles elsewhere enunciated. It is doubtful whether the court intended to go further than the two exceptions there noticed." (Pages 410, 412.)

In an early Maine case cited by appellant (*McLellan v. Richardson,* 13 Me. 82) the testimony was held inadmissible because in conflict with the policy of the law and with the grand juror's oath, but in *State v. Benner,* 64 Me. 267, 285, the contrary was held, and this language used: "So, in all cases when necessary for the protection of the rights of parties, whether civil or criminal, grand jurors may be witnesses."

In the case of *The State v. Gibbs,* 39 Iowa, 318, cited by appellant, a different question was involved. It was sought by defendant to impeach the action of the grand jury by presenting affidavits of several members for the purpose of showing that the indictment had not been concurred in by the requisite number of jurors. It is a universal rule that the evidence of members of the grand jury is not competent to impeach their action. (1 Bish. New Crim. Proc. § 858.) The same rule applies to the verdict of a petit juror. It is true the Iowa court in the opinion refers to the statutory and common-law rules enjoining strict secrecy upon the proceedings before a grand jury, and lays down the same rule as to the admissibility of testimony of its members as in the Tindle case, *supra.* However, in the case of *Steele-Smith Gro. Co. v. Potthast,* 109 Iowa, 413, 80 N. W. 517, a party's admissions before a grand jury were held to be competent evidence against him. In that case the evidence of his admissions was in the minutes of the testimony taken by the clerk of the grand jury, and the court said: "We know of no rule that would restrict the use of such minutes to cases of perjury." (Page 417.) No reference was made to *The State v. Gibbs, supra.*

Another case upon which appellant relies is the case of *Gutgesell, v. State,* (Tex. Cr.) 43 S. W. 1016, in which the court of appeals of Texas held that such testimony was incompetent. It was declared to be against the policy of the law of that state, as appeared by the oath required of grand jurors and the statute authorizing a disclosure in the two classes of cases, and that the statute excludes any other exceptions. In *Wisdom v. The State,* 42 Tex. Cr. 579, 61 S. W. 926, a different view was taken, and the language of the former case was criticized.

It appears beyond question, we think, that the doctrine of the Tindle case, *supra,* is opposed to the weight of modern authority, and as its reasoning does

not accord with our views we must decline to be bound by it. The oath provided for grand jurors by our state imposes none of the common-law restrictions of secrecy required by the statutes of many of the states. While the obligations of the oath are by many of the courts considered indicative of the policy of the law in those states, the absence of any such requirements in the oath provided by our statute is perhaps of little importance, in view of the other obligations as to secrecy imposed by the sections which we are considering. In principle we see no good reason why the statements, admissions or declarations made by a witness before a grand jury should not be disclosed by a member of the grand jury whenever lawfully required to do so, or why a member of the grand jury may not be lawfully required to testify "in relation thereto" when, after the purpose of secrecy has been effected, it becomes necessary in furtherance of justice or for the protection of public or individual rights. To the same effect see the following cases: *Simms v. The State—Loyd v. The State,* 60 Ga. 145; *State v. Broughton,* 7 Ired. Law (N. C.) 96, 45 Am. Dec. 507; *People v. Young,* 31 Cal. 563; *People v. Northey,* 77 Cal. 618, 19 Pac. 865, 20 Pac. 129; *People v. Reggel,* 8 Utah, 21, 28 Pac. 955; *Perkins v. The State,* 4 Ind. 222; *Burdick v. Hunt et al.,* 43 Ind. 381; *The State v. Van Buskirk,* 59 Ind. 384; *Shattuck v. The State,* 11 Ind. 473; *State v. Wood,* 53 N. H. 484; *United States v. Kirkwood,* 5 Utah, 123, 13 Pac. 234.

The next serious contention is that, because the appellant as a member of the board of education had no legal authority personally to make the contract for the cleaning of the school buildings, the prosecution for bribery in accepting money to make such a contract must fail. This point is urged in complaint of certain instructions given, and of error in refusing to allow the motions for a new trial and in arrest of judgment. So far as this contention bears upon the charge

in the indictment, the former decision in this case is controlling. The motion in arrest of judgment was based upon three grounds:

"(1) That the facts stated in the indictment filed in this cause and upon which the defendant was tried do not constitute a public offense. (2) That the facts stated in the indictment filed in the case and upon which the defendant was tried are not sufficient to constitute an offense or sustain the verdict heretofore rendered against the defendant in said cause. (3) That the indictment filed in this cause and upon which the defendant was tried has never been signed by the prosecuting attorney of said county."

When this case was here before it was held that the indictment was properly signed and sufficient in substance, so that upon every question raised in the motion in arrest of judgment the former decision is the law of the case. But it is urged that the evidence of the state shows that the board placed the matter of letting the contract for this work in the hands of Biscomb, superintendent of buildings, and that if the evidence shows that anything was done by appellant it is that he himself let the contract to Gilhaus. It is the contention that, as Biscomb alone could lawfully let the contract, no offense was committed.

The case of *State v. Butler*, 178 Mo. 272, 77 S. W. 560, is relied upon. In that case the defendant was charged with bribery in offering money to Doctor Chapman, a member of the board of health, to influence his vote upon the letting of a contract for the disposal of garbage. The board of health was given authority to make the contract by an ordinance of the city of St. Louis. The point was raised that the removal of garbage was a public work and the authority to contract therefor belonged to the board of public improvements, and that the ordinance giving the authority to the board of health was invalid. This view was sustained, and the court held that offering money to a member of the board of health to influence his action in letting

The State v. Campbell.

.such contract did not constitute bribery. The contract, providing for an expenditure of $65,000, was in fact entered into by the board of health, and when executed doubtless a plea of *ultra vires* on the part of the city in defense of payment would not have proved availing. The money offered was clearly to influence the officer to do what the bribe-giver and every one else believed he had authority to do, and which if done would, under some circumstances, bind the city.

The decision in that case is one which does not appeal to our sense of justice, nor does the reasoning satisfy our views of the law of bribery. Let us transpose the facts and suppose that instead of the board of health the ordinance had authorized the board of public works to let contracts for the removal of garbage; and suppose that the bribe had been offered to a member of the board of public works: it is apparent that the ingenuity of counsel would have at once discovered the same defense. It appears that the charter of St. Louis gives to the municipal assembly power to enact laws to prevent the introduction and spread of contagious diseases and to secure the general health of the inhabitants by any measure necessary, and to pass laws to sustain good government, the health and welfare of the city, and to establish a sanitary system. With equal plausibility it might in such a case be argued that the disposal of filth and slops, instead of being a public improvement, such as water-works, streets, sewers, bridges, public buildings, parks, boulevards, harbors, and wharves, looking to permanency and requiring repair and improvement, very properly belonged to the department which for years had controlled it, namely, the board of health, and therefore the ordinance attempting to give authority to the board of public improvements was invalid and the offer of money no bribery.

The second ground upon which the decision was based is, perhaps, as unsatisfactory. The particular

ordinance in question was passed by the council and signed by the president of the council September 11, 1901, and signed by the speaker of the house of delegates on September 13, 1901. On September 17, 1901, the mayor reported to the council that he had signed the ordinance. Doctor Chapman testified that defendant came to his house on the evening of September 16 and offered him the bribe. The trial court instructed that if defendant knew the ordinance had been passed and that the matter might come before the board for action, and offered the money to influence the vote of the member, it was bribery. The supreme court held that because the ordinance was not signed until the next day the board of health had no authority to let the contract, and therefore it was not bribery to offer money to influence the action of a member of the board.

Suppose a member of the board of county commissioners is offered $100 to influence his vote upon a claim filed before the board against the county, and that the next day when the matter is to come before the board it is discovered that the claim is not such a one as can be allowed because it is not verified or itemized as the statute requires; suppose it is amended, and the member votes to allow it: could it be claimed in defense of the charge of offering or accepting the bribe that when the bribe was offered and accepted there was in fact no lawful claim pending before the board? In the case of *The State v. Gregory,* 46 Kan. 290, 26 Pac. 747, defendant was charged with perjury in an affidavit to a claim filed against Finney county. The defense was that the claim appeared upon its face to have been barred by the statute of limitations, and not being a claim which the board could lawfully allow the oath was not material. The trial court set aside the conviction, and upon a second trial quashed the indictment. On appeal by the state the cause was reversed.

The court in the Butler case (*State v. Butler,* 178

Mo. 272, 77 S. W. 560) seeks to distinguish that case from *State v. Ellis,* 33 N. J. Law, 102, 97 Am. Dec. 707, where there was pending before the common council an application for permission to lay a railroad-track in the streets of the city. A member of the council was offered a bribe to influence his vote thereon. It was contended that as the council had no authority to grant the application there could be no bribery. The contention of defendant was not upheld. The Missouri court approves the ruling, and uses this language: "It was immaterial whether the action of the council could be enforced. It was a matter pending before the council, upon which the members had a right to vote. It was not necessary 'that the vote, if procured, would have produced the desired result.' " (Page 333.) It is somewhat difficult to understand how the result in the Butler case was reached and the ruling of the Ellis case approved. The Missouri statute is slightly different from ours. It contains the words "which may by law be brought before him," and the court construes these words to mean "a law in force at the time of the offer to bribe." (Page 319.) Our statute defines bribery as follows:

"Any officer of the state or of any county, city, district, or township, after his election or appointment, and either before or after he shall have qualified, or entered upon his official duties, who shall accept or receive any money or the loan of any money, or any real or personal property, or any pecuniary or other personal advantage, present or prospective, under any agreement or understanding that his vote, opinion, judgment or action shall be thereby influenced, or as a reward for having given or withheld any vote, opinion, or judgment in any matter before him in his official capacity, or having wrongfully done or omitted to do any official act, shall be punished by a fine of not less than two hundred dollars nor more than one thousand dollars, or by imprisonment for not less than one year nor more than seven years in the penitentiary at hard labor, or by both such fine and imprisonment, at the discretion of the court." (Gen. Stat. 1901, § 2212.)

Appellant was a member of the board of education, which had the exclusive power to act in reference to cleaning the schoolhouses. It was the duty of the board to act. The duty devolved upon him to participate. The gravamen of the charge was feloniously receiving money as a bribe for giving his vote, opinion, judgment and action in favor of letting or causing to be let the contract with Gilhaus. True there was no vote, but there was opinion, judgment and action by him in favor of giving Gilhaus the contract. He saw Gilhaus and made the arrangement with him, agreed upon the terms—the amount Gilhaus was to be paid—and introduced him to the superintendent of buildings, so that the superintendent to whom the letting had been referred adopted and acquiesced in appellant's action. Appellant was acting officially when he saw and arranged with Gilhaus to do the work, although if the arrangement had not been adopted by the superintendent there might possibly have been a question of the authority of appellant to make the contract. He "permitted and caused to be let" the contract in question. If, therefore, he accepted money to influence his action in causing the contract to be let, why is he not guilty of accepting a bribe as contemplated by the statute? A valid contract was let through his influence —his official opinion, judgment, and action. The mere fact that before it could be made valid it had to be ratified by the superintendent of buildings, to whom he took Gilhaus, in no legal sense destroys the criminal nature of his offense. In our view of the law, to hold otherwise would be placing entirely too much importance upon a play of words—giving to strained technicalities more consideration than they deserve in order to avoid rather than attain substantial justice. In *People v. Ellen,* (Mich.) 100 N. W. 1008, the court held :

"Where a proposition to let a contract for waterworks was one which might come before a city council for official action, the fact that the council has no au-

thority to enter into the contract proposed did not prevent the payment of money to councilmen to influence their action on the same from constituting [bribery.]" (Syllabus.)

(See, also, *People v. McGarry,* 136 Mich. 316, 99 N. W. 147; *Glover v. The State,* 109 Ind. 391, 10 N. E. 282; *The State v. Potts,* 78 Iowa, 656, 43 N. W. 534, 5 L. R. A. 814; *The State v. McDonald,* 106 Ind. 233, 6 N. E. 607; *State v. Lehman,* 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670.)

Complaint is made that the testimony of witness Lilly in reference to the amount Gilhaus charged him for similar work was immaterial, and that no foundation was laid showing that the conditions were the same. The work consisted of pumping mud and water out of a building in the same flooded district with a steam-pump, and the work was done soon after the other work was completed. The testimony was material as evidence of a circumstance bearing upon the price allowed Gilhaus and the intent with which the money was received.

There was no error in admitting in evidence the $412 check from Gilhaus to appellant. It was competent to establish the payment of the money by Gilhaus which appellant was charged with receiving from him. (*People v. McGarry,* 136 Mich. 316, 99 N. W. 147.)

Appellant insists that the court erred in refusing him a new trial, alleging three grounds:

(1) On account of newly discovered evidence, consisting of a letter dated September 21, 1889, addressed to him at Sioux City, Iowa, written by his patent attorney, in reference to his claim for letters patent upon the steam valve. This would have merely corroborated his own testimony that years before he had made an effort to secure a patent. It could not have been material evidence to disprove the charge of bribery.

(2) To enable appellant to procure the testimony of G. E. Gilhaus, a witness whose name was indorsed

upon the indictment, and for whom the state had issued a subpœna. Appellant claims that it was the duty of the prosecution to produce all the witnesses whose names were indorsed upon the indictment; that it was particularly its duty to procure the attendance of Gilhaus; and that he had the right to rely upon the performance of this duty. Cases are cited to the effect that a prosecutor owes the duty of laying before the jury all the facts of which he is informed and has the means of proving, and other cases holding that all witnesses whose names are indorsed upon the indictment should be called and sworn and defendant given an opportunity to cross-examine them. This may be the rule in some jurisdictions, but we believe it has never been recognized as the proper practice in criminal actions in this state. A prosecutor is bound by his oath to perform his duty fearlessly and vigorously. He is not to seek to convict a man whom he knows to be innocent, or to conceal facts which would establish one's innocence; and his duty to the court forbids him to employ trickery to convict any one. But he is not required to place on the stand every witness whose name happens to be indorsed upon the indictment, nor is he required to produce a witness merely because he has issued a subpœna for such witness. The defendant has no right to rely upon the presence of witnesses for whom subpœnas have been issued by the state. At his request the court may order a witness under subpœna by the state to remain; and other opportunities are afforded him for procuring the attendance of witnesses in his own behalf.

(3) The third ground for a new trial which is insisted upon is misconduct of the attorney-general in his closing argument to the jury. Affidavits of several persons present at the trial were offered to show that in his remarks counsel for the state told the jury that the appellant was not satisfied with a bribe from Gilhaus, but that he had "bought lots for $150 apiece and

sold them to the school board for $1000 apiece." The trial court evidently accepted as true the affidavit of General Coleman that he had made no such statement. He explains that he did use substantially the following language:

"This thing of giving a makeshift and sham consideration for money really received as a bribe is no new thing. You have all doubtless heard of the thrifty member of the legislature, not of Kansas, but of some other state, who owned a cheap lot down in Missouri not worth over $150; how there was a bill pending before the legislature in which a certain rich corporation was deeply interested, and how the thrifty legislator voted for that bill, and how, immediately after it was passed, he sold that cheap lot of his to the same rich corporation for the sum of $1500. Of course he claimed he had not accepted a bribe; he just sold a lot. So, in this case, Campbell did not accept a bribe; he tells you he simply sold a valve."

There had been, of course, no evidence of any such transactions upon the part of appellant; and, aside from his positive denial, the extreme improbability of counsel having employed the language imputed is apparent. The ruling of the trial court upon the motion should be regarded as a finding against defendant's affidavits. The language which counsel admits having used was not improper in argument. We have considered the other remarks of counsel of which complaint is made, and find nothing prejudicial to appellant or which warranted a new trial.

It becomes unnecessary to consider the errors complained of in the instructions to the jury, for the reason that from our view of the law governing this case it follows that the instructions were properly given. The judgment is affirmed.

All the Justices concurring.