THE STATE OF KANSAS v. TOBIAS J. TAYLOR.

1. MURDER — *Jury, Presumed Valid.* In a criminal prosecution for murder, tried by a jury, where no objection was made to any one of the jurors nor to the array or panel, and there is nothing in the case tending to show that any one of the jurors was incompetent, *held*, that it will be presumed that the jury was a legal and valid jury; and this whether any of the jurors were legally selected and summoned before the case was called for trial, or not.

2. ——— *Written Testimony of Defendant, No Error in Admitting.* And in such prosecution, where the trial court permitted the testimony of the defendant taken at the coroner's inquest, and reduced to writing and signed by the defendant, to be read in evidence on the trial on behalf of the state, and permitted this to be done although the defendant did not testify on the trial; and, from anything appearing in the case, this testimony was given voluntarily; and the defendant objected and excepted to its introduction, but without giving any reason for his objection or exception: *Held*, That the court did not err in permitting this testimony to be introduced.

3. ——— *Written Testimony, Taken by Jury.* And where the court permitted the paper containing this testimony to be taken by the jury to their room to be considered by them while deliberating upon their verdict, but at the time when the court permitted this to be done it announced in open court and in the presence of the defendant and his counsel that the court would so permit the same to be done, and no objection was made, *held*, that no material error was committed.

4. TESTIMONY, *Erroneously Read in Evidence.* And in such prosecution, where the court permitted the written testimony, taken on the preliminary examination of the defendant, from a witness who at the time of the trial was alive and within the jurisdiction of the court, to be read in evidence on the trial, but there is no showing what the testimony was, or that it was in any degree prejudicial to the substantial rights of the defendant, *held*, that the court erred in permitting the testimony to be read in evidence, but that the supreme court cannot say that the error was material.

5. ADDITIONAL WITNESSES —*Indorsement of Names on Information—Discretion of Court.* And in such prosecution, and during the trial, the court permitted the names of seventeen additional witnesses to be indorsed upon the information, and permitted such witnesses to testify; but there is no showing as to what their testimony was, or that it was prejudicial to the rights of the defendant: *Held*, That the su-

preme court cannot say that the trial court abused its discretion in permitting said names to be indorsed upon the information, or in permitting the witnesses to testify.

### *Appeal from Clark District Court.*

PROSECUTION for murder in the first degree. From a conviction at the March Term, 1886, the defendant *Taylor* appeals. The opinion states the case.

*Francis C. Price,* and *Dawson Smith,* for appellant.

*Stephen A. Parsley,* county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution upon an information charging the defendant, Tobias J. Taylor, with feloniously killing Robert Layfield under such circumstances as to constitute the offense of murder in the first degree. It is alleged that the offense was committed in Clark county, Kansas, on June 26, 1885; and all the proceedings had with reference to such offense were had in that county. A coroner's inquest was held on the next day. A preliminary examination was had before a justice of the peace on July 3, 1885. A second preliminary examination was had before a justice of the peace on March 9, 1886. The information upon which the defendant was tried was filed in the district court on March 15, 1886. A trial was had before the court and a jury, commencing on March 20, 1886, and ending on March 25, 1886, when the jury found the defendant guilty of murder in the first degree, as charged in the information. Some time afterward, but during the same term of the court, the defendant was sentenced in accordance with the verdict of the jury; and from this sentence he now appeals to this court.

The defendant's counsel assign numerous errors as having been committed by the trial court. The first one, alleging that "the court below erred in overruling defendant's motion for a change of venue," and the second one, alleging that "the court below erred in overruling defendant's motion for a con-

tinuance," are not discussed in the defendant's brief, and we shall not discuss them.    They are overruled.

The third point made by the defendant, that "the court below erred in compelling the defendant to be put ·upon his trial and tried by an incompetent and illegally-selected jury," is discussed at length in the defendant's brief; and it requires more consideration.   The boundary lines of Clark county were established, or rather reëstablished, on March 13, 1885, by an act of the legislature, approved March 7, 1885.   (Laws of 1885, ch. 71, § 2.)   On the same day, March 7, 1885, the legislature attempted to attach the counties of Clark and Meade, until organized, to the county of Comanche for judicial purposes, (Laws of 1885, ch. 119, § 2 ;) but this attempt was abortive, for the reason that the act was not passed in accordance with the provisions of the constitution, and was therefore, to this extent, unconstitutional and void.   (*In re Wood*, 34 Kas. 645.)   On May 5, 1885, Clark county was duly organized. On June 26, 1885, the alleged offense was committed ; and the proceedings with reference thereto were had as above stated. On February 26, 1886, by an act of the legislature, approved February 19, 1886, (Laws of 1886, ch. 121,) the 24th judicial district of the state of Kansas was created, and Clark county was placed in such district, and it was provided that terms of the district court should be held in that county on the third Tuesday of March and the third Tuesday of November in each year.   The trial in this case was had at the March term of this court, 1886.   The acts of the legislature relating to the selection and summoning of jurors which may have some application to this case are chapter 54 of the Compiled Laws of 1879, and chapters 116 and 117 of the Laws of 1886.   Chapter 116 was passed on the same day on which the act creating the 24th judicial district was passed, and chapter 117 was passed on the next day.   Under which one of the above-mentioned statutes it was intended to select, summon or impanel the jury, we do not know.   It appears from the record that on the day preceding the aforesaid March term of the court, the judge of the court "ordered the clerk of said district

court to issue a *venire* for a petit jury and place the same in the hands of the sheriff of said county of Clark, commanding him to summon a petit jury to serve as such jury during the March term of said Clark county district court; and a jury was so summoned by said sheriff, which sat on the trial of this cause." It is admitted that the term of the district court of Clark county held in March, 1886, was a legal and valid term, and that the court itself was a legal and valid court, and the only invalidity urged or claimed is the supposed invalidity of the organization of the jury. Now as the term was legal and valid, and the court itself legal and valid, and the court one of general and superior jurisdiction, and a court for the trial of causes requiring a jury, it would seem, aside from all statutes, that the court itself would have the inherent power, by order or otherwise, to obtain a good and valid jury. And there is no statute prohibiting the court from procuring a jury where one has not been obtained under the provisions of the statutes. The statutes making provision for selecting, summoning and impaneling juries contain general provisions for this purpose, and also provisions for special cases. For instance, §§ 23 and 26 of chapter 54, of the Compiled Laws of 1879, and §§ 1 and 2 of chapter 117, of the Laws of 1886, make provisions for special cases. Under some of these provisions the court itself has the power to obtain a legal and valid jury, although no jury has been procured under any of the other provisions, and although no jury is in attendance on the court. ( *The State v. Skinner*, 34 Kas. 258, 267, 268 ; *Trembly v. The State*, 20 id. 116, 120.) And the court having such power, it will always be presumed that it has obtained a legal and valid jury, unless the contrary is affirmatively shown ; and the contrary was not shown in this case. Also, it will always be presumed that a defendant in a criminal action has waived all mere irregularities in the procuring of a legal and valid jury, unless the contrary is also affirmatively shown ; and this was not shown in this case. All the members of the jury were competent to serve. At least no claim has been made that any one of the jurors who tried the case was not

competent.   No objection was made in the court below to any
one of the jurors.   Nor was any objection made to the panel.
Not even the slightest intimation was given to the court of
any desire on the part of the defendant to challenge the array.
So far as appears from the record, the defendant was entirely
satisfied with every juror and with the entire array.   Hence,
if any irregularity occurred in the selection, the summoning
or the impaneling of the jury, it must be presumed that the
1. Murder—jury   defendant waived such irregularity.   We think
presumed valid.   the jury was a legal and valid jury, whether the
*venire* issued on the order of the judge was legal and valid, or
not.

It is also claimed by the defendant that "the court below
erred in permitting testimony purporting to be that of the de-
fendant taken at a coroner's inquest to be read to the jury on
behalf of the state, when defendant did not testify in his own
behalf on the trial of this cause."   The question whether the
court below erred or not in permitting this testimony to be
introduced, depends entirely upon the question whether it was
voluntarily given before the coroner's inquest or not.   It was
admitted in evidence under that rule of evidence which per-
mits a party's own admissions or confessions, his own declar-
ations, to be introduced in evidence against him; and if it was
voluntarily given before the coroner's inquest no error was
committed in receiving it on the trial; but if it was given
under duress, if the defendant was compelled by subpena or
otherwise to disclose it before the coroner's inquest, then of
course the court below should not have permitted it to be in-
troduced on the trial.   Now from anything appearing in the
record, we think the testimony was voluntary.   There does
not appear to have been any subpena issued.   Nor does it ap-
pear that any other kind of compulsion was used.   Nor does
it appear that any questions were asked the defendant at the
coroner's inquest; but it would seem from the paper contain-
ing this testimony that he voluntarily made his own statement,
that it was given in narrative form and reduced to writing,

and then that he signed the same.  The heading of the testimony is merely as follows: "Tobe. Taylor, being duly sworn, deposeth and sayeth;" then comes the principal portion of his testimony.  And then the record states as follows: "Tobe. Taylor, being recalled, deposeth and sayeth;" then comes another portion of the defendant's testimony.  And after this still another portion of his testimony is given, without any heading.  These three portions of the defendant's testimony were really three parts of one whole.  From anything appearing in the record, the defendant may have desired to be sworn and to testify; and after giving the first portion of his testimony he may have desired to be recalled; and after giving the second portion of his testimony he may again have voluntarily appeared and given the third portion of his testimony.  All may have been done at his instance and request.  Besides, when the state offered to introduce this testimony on the trial the defendant simply made an "objection" without stating any reason for his objection; and after the evidence was introduced, the defendant simply "excepted" without giving any reason for his exception.  Such an objection and such an exception are not sufficient. ( *The State v. Ingram,* 16 Kas. 14, 17; *The State v. Cole,* 22, id. 474; *Rheinhart v. The State,* 14 id. 318; *Wilson v. Fuller,* 9 id. 176; *K. P. Rly. Co. v. Pointer,* 9 id. 620; *Stout v. Baker,* 32 id. 113; *Mo. Pac. Rly. Co. v. Morrow,* 32 id. 217.)  The defendant should have given his reasons for objecting and excepting to the evidence; and if any one of the reasons was that his testimony before the coroner's inquest was not voluntary, he should have so stated, so that the state could have shown, if necessary, that it was voluntary, as in all probability it was.

2. Written testimony of defendant, no error in admitting.

He made no claim at the trial that the testimony was not voluntary.  We think no error was committed in permitting this evidence to be introduced.

The defendant also claims that "the court below erred in permitting the jury to take the purported testimony of the defendant, taken at a coroner's inquest, to their jury room to

read and examine and discuss while they were deliberating of their verdict, and such testimony being underscored in places." The court permitted this testimony, along with other papers in the case, to be taken by the jury to their room, but the court did "at the time and in open court and in the presence of the defendant and his counsel, announce and designate distinctly each paper so given to said jury, at which time the defendant made no objection." Under these circumstances, we think it is not necessary to determine whether the paper containing defendant's testimony should have been permitted to go to the jury or not, for the testimony was the defendant's own testimony, and it had already been read in evidence to the jury, and the court at the time gave full notice to the defendant and his counsel that the paper would be given to the jury, and neither of them objected thereto; and hence we would think that it should be held that the de-

3. Written testimony, taken by jury.

fendant was willing that the paper should go to the jury, and that he and his counsel, by their silence, waived any supposed irregularity in permitting it to go to the jury. Either the defendant or his counsel for him should have objected at the time to the paper going to the jury, if they did not desire that the jury should see it and examine it. There was no claim or showing that the paper was in the slightest particular different when given to the jury from what it was when the defendant signed it.

It is also claimed by the defendant that "the court below erred in permitting the testimony of one A. P. Clancey to be read to the jury on the trial of said cause. Said Clancey was within the jurisdiction of the trial court, and such testimony had been taken at a pretended and illegal preliminary examination of the defendant." Now as Clancey was alive and within the jurisdiction of the trial court, we think the court erred in permitting the testimony to be introduced; and this without regard to whether the preliminary examination was legal or illegal. But there is not the slightest showing as to what the testimony was, or that it was prejudicial to any of

the substantial rights of the defendant. Indeed, from any-
thing appearing in the case, the testimony may have been ben-
eficial to him. We therefore cannot say that any
material error was committed in permitting this
evidence to be introduced. Besides, the objection
and the exception to the introduction of this evidence were
also too general to be available to the defendant.

*4. Testimony, erroneously read in evidence.*

The defendant also claims that "the court below erred in
permitting the state's attorney to indorse upon the back of the
information in this cause, after the commencement of the trial
and from time to time during its progress, the names of sev-
enteen additional witnesses, all of whom testified on behalf
of the state and against the defendant." It is within the dis-
cretion of the trial court to permit the names of additional
witnesses to be indorsed on the information, and then to per-
mit such witnesses to testify. ( *The State v. Cook,* 30 Kas. 82;
*The State v. Teissedre,* 30 id. 476.) But still it would seem
that to permit the indorsement of the names of so many wit-
nesses on the information would be almost an
abuse of judicial discretion. We cannot say, how-
ever, in this case that it is, for the reason that it
is not shown what the testimony of any one of
the witnesses was, or that it was in the slightest degree pre-
judicial to any of the substantial rights of the defendant.
All these witnesses may have been introduced merely to im-
peach other witnesses, and each one of them may have
stated when introduced that he did not know anything about
the case or about the matter concerning which he was called
upon to testify; or, indeed, his testimony may have been ben-
eficial to the defendant. There is nothing to show that the
indorsement of these names upon the information or the per-
mission of the witnesses to testify prejudiced in any degree
any of the substantial rights of the defendant.

*5. Additional witnesses—in-dorsement of names on in-formation— discretion of court.*

We do not think that it is necessary to consider any of the
other questions presented by counsel for the defendant. We
do not think that any of the points presented by defendant's

counsel are tenable; and from the record in the case it does not appear that any material error was committed by the court below.

The judgment of the court below will be affirmed.

All the Justices concurring.