THE STATE OF KANSAS V. O. W. FINCH.

No. 14,319.    (81 Pac. 494.)

SYLLABUS BY THE COURT.

1. HOMICIDE—*Election of Counts.* In a prosecution upon several counts, where an election is proper and necessary upon which of the counts the state will rely for conviction, the appropriate time to make such election is at the close of the testimony in behalf of the state.

2. ——— *Withdrawal of Testimony.* While the withdrawal of testimony erroneously admitted, coupled with an instruction to the jury to disregard it, will ordinarily cure the error, there may be testimony so material, and of a kind calculated greatly to prejudice the jury, that a withdrawal will not remove the prejudice nor cure the error.

3. ——— *Statements of Defendant—Admissibility.* The testimony of a witness subsequently prosecuted for manslaughter, taken at a coroner's inquest in pursuance of a subpœna, where such witness was not at the time under arrest or accused of the crime, and where there is nothing indicating that the testimony was involuntarily given, is admissible against him when he is put upon trial for the commission of the offense.

4. ——— *Response to a Subpœna—Not Involuntary.* Such testimony is not deemed to be involuntary merely because it was given in response to a subpœna.

5. PRACTICE, DISTRICT COURT—*Recalling Jury.* It is not error for a court to recall a jury after they have deliberated for some time to inquire as to the probability of an agreement upon a verdict, and also whether the failure to agree was caused by a misunderstanding of the instructions or of the evidence, nor to ascertain from the foreman how the jury were divided in point of numbers, without indicating whether they were for or against the defendant.

Appeal from Finney district court; WILLIAM EASTON HUTCHISON, judge. Opinion filed July 7, 1905. Affirmed.

*C. C. Coleman,* attorney-general, and *Albert Hoskinson,* county attorney, for The State.

*G. L. Miller,* for appellant.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an information containing two counts O. W. Finch was charged with manslaughter in the third and fourth degrees for the killing of M. Brooks. He was found guilty of manslaughter in the fourth degree, as charged in the second count. In his appeal numerous errors are assigned, some of which are not deemed to be material. The information, which closely follows the language of the statute, is challenged, but it clearly appears to be sufficient.

After the opening statement had been made in behalf of the state the defendant asked that the county attorney be required to elect under which count of the information he would rely for a conviction. The motion was denied, and without error. An election was required at the close of the testimony for the state, and the county attorney then elected to stand on the charge in the second count. That is an appropriate time to make an election when an election is necessary, and certainly there is no ground to complain that it was not made earlier.

The questions asked of the witness for the state on cross-examination as to whether the shooting was accidental involved conclusions related to one of the main issues submitted to the jury, and hence were properly excluded.

Nor was any error committed in the admission of the testimony as to conversations with the defendant in regard to his having and handling a gun before the shooting, and the use he intended to make of it. It went to the culpable negligence charged against him.

The principal complaint of the defendant is of the admission of testimony given by himself at the coroner's inquest. The stenographer who took the testimony was introduced as a witness, and after qualifying she read from her notes the testimony that the defendant had given. There was an objection that her

name had not been indorsed on the information until after the defendant had pleaded—which is immaterial —and for the further reason that the defendant was an involuntary witness at the coroner's inquest, and by introducing his testimony he was in fact made a witness against himself, in violation of the constitution. The objection was overruled, and the testimony admitted. Later the court on its own motion struck it out, and advised the jury that it was withdrawn from their consideration.

The withdrawal of testimony erroneously admitted, coupled with an instruction to the jury to disregard it, will in most cases cure the eror. If, however, the testimony is very material, and of a kind calculated greatly to influence and prejudice the jury, a withdrawal of it with an instruction to overlook it may not remove the prejudice or cure the error. Assuming that the effect of the evidence was not removed by its withdrawal, we find nothing in the record showing that it was inadmissible.

Like others, the defendant was subpœnaed as a witness to testify at the inquest as to the cause of Brooks's death. For aught that appears he may have been anxious and swift to testify. There is not a hint in the record that he was led to testify through any inducement of promised favor, or by reason of any fear, menace, or duress. Ordinarily, all that a defendant has said pertinent to the subject of inquiry may be received in evidence against him. The exceptions to this rule are when admissions have been extracted from him by means of promises or threats, or where testimony given or statements made have been compulsory or involuntary. The test of admissibility in this and like cases is, Were the statements made voluntarily and without compulsion? In this instance they were made in an inquiry where the defendant was a witness and not a party, and where he might have claimed the privileges of a witness. He was not in

custody, nor had any accusation been made against him. Indeed, it does not appear that Brooks's death was then thought to have been caused by any criminal act. The constitutional limitation that no person shall be a witness against himself should be broadly interpreted so as to give full protection to one accused of crime, but neither the constitutional limitation nor the rule of the common law requires the exclusion of statements or testimony voluntarily given. An unsworn confession, made to an officer by one charged with crime and under arrest, may be given in evidence against him, providing it was freely and voluntarily made. The fact that a statement with reference to the cause of a death is made under oath by one not accused nor in custody can hardly be less reliable. If the testimony that defendant gave was incriminating, was it inadmissible merely because he was subpœnaed as a witness and gave his testimony at a formal inquest before the coroner? There was no compulsion to testify, unless the mere fact that he was subpœnaed to give his testimony can be so regarded. There is considerable diversity of opinion in the cases as to the admission of such testimony, and these may be found compiled and classified in Wigmore on Evidence (vol. 1, §851, and the appended note).

In an early New York case the subject was examined and the cases reviewed, and it was held that upon a trial for murder statements made by the prisoner as a witness at a coroner's inquest upon the body of the deceased, when the witness was not under arrest or accused of the crime, were admissible against him. (*Hendrickson v. The People,* 10 N. Y. 13, 61 Am. Dec. 721.) In a later case a witness at a coroner's inquest who appeared in response to a subpœna testified, and on his subsequent trial the testimony was admitted against him, although he knew at the time he testified that he was under suspicion of having committed the

crime under investigation and would probably be arrested. (*Teachout v. The People,* 41 N. Y. 7.)

In *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, the defendant was charged with murder. At an inquest over the body of the deceased the defendant testified in pursuance to a subpœna issued by the coroner, and he was threatened with punishment if he refused to testify. At the close of the inquest he was arrested, charged with the crime. The court said:

"When a person is called upon to testify at a coroner's inquest, convened to inquire into a crime, for the commission of which such person is then under arrest, or upon which he has been formally accused, he occupies the same position, and he has the same rights, as though he were before an examining magistrate. (*People v. Mondon,* 103 N. Y. 211, 8 N. E. 496, 57 Am. Rep. 709.) So, on the other hand, if the person who testifies at the inquest does so simply as a witness, he has none of the rights or immunities of a party. This is the foundation of the rule which is now firmly established in this state—that when a person testifies at an inquest as an accused or arrested party, his testimony cannot be used against him upon a subsequent trial of an indictment growing out of the inquest, unless his testimony has been voluntarily given after he has been fully advised of all his rights and has been given an opportunity to avail himself of them. (*People v. Chapleau,* 121 N. Y. 267, 24 N. E. 469.) The logical and necessary corollary of that part of the rule stated is that when a person testifies simply as a witness and not as a party, his testimony can be used against him even though he is afterward indicted and tried for the commission of the crime disclosed by the inquest." (Page 331.)

Other authorities supporting this rule are: *Wilson v. The State,* 110 Ala. 1, 20 South. 415, 55 Am. St. Rep. 17; *Jones et al. v. The State,* 120 id. 303, 25 South. 204; *State v. Coffee,* 56 Conn. 399, 16 Atl. 151; *State v. Gilman,* 51 Me. 206; *Schoeffler v. The State,* 3 Wis. 823; *Williams v. The Commonwealth,* 29 Pa. St. 102; *Newton v. The State,* 21 Fla. 53; *Kirby v. The State,*

23 Tex. App. 13, 5 S. W. 165; *The People v. Taylor,* 59 Cal. 640; 1 Green. Ev., 15th ed., §225.

Some of the courts have taken a different view. (*The State v. Young,* 119 Mo. 495, 24 S. W. 1038; *State v. Young,* 60 N. C. 126; *State v. Senn,* 32 S. C. 392, 11 S. E. 292; *State v. O'Brien,* 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399.) It appears from the opinion of the supreme court of Missouri, in *The State v. Young, supra,* that the defendant was an ignorant German boy, and that his examination, upon its face, showed that its purpose was to elicit from him criminating admissions, and the examination was conducted as if he were the defendant in a preliminary examination. The same court, in *The State v. Wisdom,* 119 Mo. 539, 24 S. W. 1047, held that statements voluntarily made by a witness before a coroner's jury with a view of casting the guilt upon another were admissible against him on his trial for murder. In *State v. Young,* 60 N. C. 126, the witnesses were arrested and brought before the coroner, and while in custody statements were obtained from them implicating them in the homicide.

Attention is called to the case of *The State v. Taylor,* 36 Kan. 329, 13 Pac. 550, but there the testimony at the coroner's inquest was admitted because it did not appear to be involuntary. In the course of the opinion it was said that if the defendant was compelled by subpœna or otherwise to give his testimony before the coroner's inquest, and there was duress, it should be excluded; but that case is not an authority that testimony given under a subpœna and without compulsion and duress is inadmissible.

Testimony at a coroner's inquest as to the cause of a death, given by a witness who is not accused nor under arrest, is not deemed to be involuntary merely because he testified in response to a subpœna. Of course, if it appeared that he testified as a party rather than as a witness, or if he had been induced to

testify by promises or threats or other improper influences, his testimony might not subsequently be used against him. In this case there are no circumstances indicating coercion, nor anything inconsistent with the view that the defendant desired or sought the opportunity to testify.

The criticisms of the instructions have been examined, and it is found that the charge given by the court fully covered the issues in the case and fairly presented the law applicable to them. Some of those requested and refused were inappropriate, but it appears that the pertinent principles of law in most of them were included in the instructions given. No error is seen in any of the rulings charging the jury, nor do we see any necessity for an extended review of the instructions.

After the jury had been out a considerable time they were recalled and inquiry was made by the court as to the probability of an agreement. The judge inquired if the disagreement was because of a failure to understand the instructions, and also if they disagreed as to the testimony. They informed the court that there was no misunderstanding as to the instructions, but that they did not agree as to the testimony. The judge then remarked: "Mr. Foreman, you may step to my desk and indicate with pencil and paper the two numbers that show how the jury stand at this time; not which side they are for, but just write the two numbers." After this was done the jury were directed to return to their room for further deliberation. Of this action complaint is made. It will be observed that there was no admonition urging an early verdict, nor anything approaching coercion. Evidently the court was seeking information to determine whether there was reason to hope for an agreement upon a verdict, and there was no impropriety even in the action taken.

An attempt was made to impeach the verdict by the

affidavit of a juror, in which he undertook to state some of the things that influenced him in uniting with others in a verdict of guilty. They are matters which essentially inhere in the verdict, and which were not competent to impeach it. It may be said, however, that later he made a fuller affidavit, explaining that he voted for conviction and agreed on the verdict after a careful consideration of the evidence and a careful reading of the instructions of the court.

We have also examined the testimony on the motion for a new trial with reference to the conduct and statements of jurors Thompson and Griffin, and find nothing which disqualified them or indicated that the verdict was reached by improper influences.

Finding no prejudicial error, the judgment is affirmed.

All the Justices concurring.