. No. 21,529.

THE STATE OF KANSAS, *Appellee*, v. W. W. HARRIS, *Appellant.*

SYLLABUS BY THE COURT.

1. ARSON—*Inquisition before Fire Marshal—Use of Testimony on Trial.* The testimony of a witness voluntarily given in an inquisition to determine the origin of a fire, held by the state fire marshal or county attorney under an act relating to protection against fire (Laws 1917, ch. 198); may be used so far as relevant in a prosecution for arson subsequently brought against the witness.

2. SAME—*Evidence at Inquisition—Not Involuntary.*   Such testimony is not deemed to be involuntary because given in response to a subpœna, or because a witness refusing to appear or to testify is subject to punishment, nor yet because of the statutory provision that no persons shall be present at the inquisition except the officers and that the testimony taken shall not be disclosed to any one else.

3. SAME—*Inquisition—Witness Not Required to Criminate Himself.*   In such an inquisition a witness is at liberty to claim his constitutional privilege of refusing to give answers that would criminate himself,

the same as in an ordinary action, and if he does not claim the privilege, but thereafter, in a prosecution against him, takes the stand and gives testimony in his own behalf, he may be cross-examined as to statements and admissions made in an inquisition before the fire marshal.

4. SAME—*Evidence of Other Acts of Arson.* Testimony that other acts of arson were committed by defendant in order to obtain insurance, shortly before the setting of the fire under prosecution, may be admitted to prove the ingredient of intent of the crime charged.

5. SAME—*Inspection of Premises by Jury.* The fact that a jury, sent out to inspect certain premises in relation to which testimony had been given, viewed other premises on the way, will not vitiate their verdict, unless it appears that a party suffered prejudice by the unauthorized view.

6. SAME—*Information—Two Counts—Same Offense—No Election Required.* The information contained two counts based on the same act of arson, one charging the burning of a building, and the other the burning of a building and the property in it to defraud an insurer. The court ruled that only one conviction could be had under the information. *Held,* that no error was committed in refusing the motion of defendant to require the prosecutor to elect upon which count he would rely for a conviction.

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion filed July 6, 1918. Affirmed.

*Elrick C. Cole, William Osmond,* both of Great Bend, *Joseph G. Waters,* and *John C. Waters,* both of Topeka, for the appellant.

*S. M. Brewster,* attorney-general, *S. N. Hawkes,* and *John L. Hunt,* assistants attorney-general, and *Clyde Allphin,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The defendant was convicted of having burned a barn and its contents with the intent to defraud an insurance company. The information contained two counts, one charging the defendant with burning a barn, and the other with burning the building and the property in it for the purpose of defrauding the insurer. The burning with which the defendant is charged occurred in August, 1916. Prior to his arrest and about March 15, 1917, a statutory investigation was held by the state fire marshal and the county attorney in the latter's office, where the defendant was questioned as to his

knowledge concerning the origin of the fire, the questions and answers being reduced to writing. At the trial the defendant took the stand as a witness in his own behalf, and on cross-examination he was questioned as to the answers he had given at the inquisition. Objection was made to this testimony, and its admission is assigned as error. It is contended that the admission of the evidence practically made him a witness against himself, in violation of section 10 of the bill of rights. It is said that the statute under which the inquisition was held is invalid, because it authorizes the compulsion of testimony without offering immunity from prosecution. Attention is called first to the provisions of section 8 of chapter 312 of the Laws of 1913, which provided for the subpœnaing of witnesses to testify to any facts they might know as to the origin of the fire, and which provided that the failure to appear and testify constituted a misdemeanor punishable by fine and imprisonment. It was also provided that no person should be present or should hear the testimony given except the fire marshal, or his chief deputy, the county attorney, and the justice of the peace, if the testimony was taken before the latter, and that the testimony so taken should not be disclosed to any one other than the officers named. (Gen. Stat. 1915, § 10851.) The statute in force when the inquisition was held, and which repealed the act of 1913, is chapter 198 of the Laws of 1917. It provides for the inquiry, the subpœnaing of witnesses, makes their refusal to be sworn or testify a misdemeanor, and gives the justice of the peace power to punish witnesses for contempt, substantially as did the earlier statute. Section 8 of the later act does not provide for the exclusion of all persons except the officers, nor that the evidence taken shall not be disclosed to others than the officers; but in section 11 of the act it is provided that the officers may exclude all persons during the inquiry, and it is made unlawful to disclose the testimony taken, without the consent of the officers. The statute in force when the inquisition was held is the controlling one, but the terms of neither act afford any support for defendant's contention. The testimony given by the defendant at the inquisition, and about which inquiry was made on cross-examination, could hardly be regarded as material, even if he had claimed his privilege and it had been refused. When he took the stand in his

own behalf the testimony took a wide scope and covered in a general way his testimony given at the inquisition and which was brought out on the cross-examination in this prosecution. If it be assumed, however, that the challenged testimony was material, it cannot be regarded as involuntary and violative of section 10 of the bill of rights. While the statute provides for the issuance of subpœnas and prescribes penalties for the refusal of witnesses to attend and give testimony, none of the requirements of the act prevented him from claiming the privilege of silence at the inquisition on the ground that his answers would criminate himself. He was not under arrest, but had the status of a witness, and was free to claim this constitutional privilege as a witness would in an ordinary civil or criminal action. In civil cases a witness refusing to obey a subpœna or to be sworn and answer as a witness may be punished as for contempt, but this does not deprive him of the constitutional privilege to refuse to give testimony which would criminate himself, nor has it been suggested that the provision is unconstitutional because it does not make an express exception of the constitutional guaranty that a witness shall not be compelled to testify against himself. He is deemed to know the law and his rights in the premises, and hence it is not material that he did not have counsel present to advise him that he was not required to testify against himself, and his failure to claim his privilege was a waiver of it. He was no more under compulsion to give testimony against himself in the inquisition than is a witness at a coroner's inquest, and in *The State v. Taylor*, 36 Kan. 329, 13 Pac. 550, it was held that testimony voluntarily given at such an inquest may be subsequently received in behalf of the state in a subsequent prosecution against such person, although he did not offer himself as a witness. Here the defendant became a witness at the trial, and his voluntary offer of himself in that capacity gave the state the right to cross-examine him on every fact about which he gave testimony in chief, where there was, as here, a proper relevancy between his statements at the inquisition and his testimony at the prosecution. To make the testimony admissible it must, of course, have been voluntarily given, and although some language used in the Taylor case indicated that testimony given in obedience to a subpœna might not be

voluntary, the question was subsequently examined, and it was held that the Taylor case "is not an authority that testimony given under a subpœna and without compulsion and duress is inadmissible." (*The State v. Finch,* 71 Kan. 793, 798, 81 Pac. 494.) A witness subpœnaed to give testimony in a proceeding, who takes the stand and gives testimony without claiming his privilege, waives the right to object to the use of the statements and admissions so made, in a subsequent prosecution, and they are admissible so far as they are relevent to the case, and especially is this so if in the later proceeding he takes the witness stand in his own behalf. (*The State v. Simmons,* 78 Kan. 852, 98 Pac. 277. See, also, *In re Burrows, Petitioner,* 33 Kan. 675, 7 Pac. 148; *The State v. Sorter,* 52 Kan. 531, 34 Pac. 1036; *The State v. Lewis,* 56 Kan. 374, 43 Pac. 265; *The State v. Jack,* 69 Kan. 387, 76 Pac. 911; *The State v. Inman,* 70 Kan. 894, 79 Pac. 162; *The State v. Campbell,* 73 Kan. 688, 85 Pac. 784; *People v. Molineux,* 168 N. Y. 264; 3 Wigmore on Evidence, § 2276; Note, 70 L. R. A. 33.)

Another claim of error is the admission of evidence tending to show that the defendant had set fire to a stack of alfalfa upon which he had obtained insurance. This fire occurred about a month prior to the one for which the defendant was prosecuted. The purpose of the testimony was not to prove another offense, but to show the intent of the defendant in the commission of the offense charged and as an ingredient of that offense. There was testimony tending to show that defendant had obtained insurance on buildings, horses, mules, household goods, implements, hay, flax, grain and fodder, and the alfalfa hay was included in the policy with some of the property burned in the fire for which defendant was prosecuted. Defendant was charged and convicted of burning the barn and the property in it to defraud the insurer. Some testimony was offered tending to show that defendant claimed the loss on the alfalfa in excess of its value, and that other property insured was overvalued. The intent to defraud the insurer was an essential element of the crime charged, and any fact or circumstance tending to show the ingredient of intent is admissible, although it may also tend to prove the commission by the defendant of an offense other than the one alleged in the information. (*The State v. Burns,* 35 Kan. 387, 11

Pac. 161; *The State v. Franklin,* 69 Kan. 798, 77 Pac. 588; *The State v. Briggs,* 74 Kan. 377, 86 Pac. 447; *The State v. Hetrick,* 84 Kan. 157, 113 Pac. 383; *The State v. Ball,* 93 Kan. 606, 144 Pac. 1012; 12 Cyc. 408; Note, 62 L. R. A. 193.)

Another assignment of error is based on the conduct of the jury in making an inspection of the premises under the direction of the court. The testimony in the case related to the premises upon which the burned barn had been located, and some of it to a barn of Mrs. Margaret Harris in Great Bend, where some of the insured property had been placed before the fire, and reference was also made by some of the witnesses to the Johnson place about a half mile from the location of the burned barn. The court directed the jury to inspect the premises upon which the barn had stood and cautioned them as to their conduct in making the inspection. At the time, counsel for the defendant stated to the court: "We would like to have them go through the house." Counsel for the state then remarked: "We would like to have them look over all of the premises." The court responded: "They may do so." When the jury went out they inspected, not only the place where the barn had stood, but also viewed the inside of the barn in Great Bend, and besides, they had a view of the Johnson premises. There might be a question whether the direction of the court warranted an inspection of any premises other than those on which the barn had been located. The general language used is open to the interpretation that they were to view all premises to which the testimony related. The proximity of the Johnson place to the Harris place, where the barn had been burned, was such that the jury could readily have viewed the Johnson place while at the Harris place; and, because of the testimony, there would have been no error if the court had expressly directed the jury to view the Johnson place. Besides, no attempt was made to show that anything seen or done there could have affected their verdict or resulted to the prejudice of the defendant. The inspection made in the barn in Great Bend could have had no other purpose than to verify some testimony given by two witnesses to the effect that three sets of harness had been taken from the barn on the farm before it was burned and placed in a manger of the Great Bend barn and covered with a carpet. Other testimony was to the effect that the harness was

afterwards removed and put in a barn belonging to a brother of the defendant. The testimony respecting the harness was contradicted by the defendant, and it was claimed there was no room in the manger for the harness. Probably the jury desired to obtain a better understanding of the conflicting testimony on this point, and, believing it to be their duty to view any premises about which testimony had been given, they inspected the manger in this barn. However, if the inspection was not within the purpose of the court's direction, and if treated as made without permission, it would not vitiate the verdict unless it should appear that the inspection operated to the prejudice of the defendant. An irregularity or error in the proceedings of the trial which does not affect the substantial rights of the defendant or operate to his prejudice affords no grounds for the reversal of the judgment. (Crim. Code, § 293.)

There is further objection that the court erred in refusing the motion of defendant to require the state to elect upon which count of the information it would rely for a conviction. The charges in the two counts of the information were based on the same transaction—the same act of arson. To meet the exigency of the proof it was competent for the state to set forth the offense in different ways and in different counts. The jury were instructed that only one conviction could be had under the information, and defendant was convicted only of the offense charged in the second count. The defendant has no reason to complain of this ruling.

The judgment is affirmed.