No. 34,476

THE STATE OF KANSAS, *Appellee,* v. HERBERT McCARBREY, *Appellant.*

(102 P. 2d 977)

Opinion filed June 8, 1940.

*Max L. Frederick* and *James B. Kelsey,* both of Leavenworth, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, *Walter Biddle,* county attorney, and *Colonel H. Boone,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The defendant was charged with murder and arson. He was convicted under the charge of arson in the first degree and of arson in the second degree, and appeals.

On the morning of February 14, 1939, a number of fires broke out in the city of Leavenworth. As a result of a falling chimney at one of these fires, two firemen received injuries resulting in death.

On April 1, 1939, the county attorney filed an information in the district court of Leavenworth county consisting of four counts,

charging the defendant with murder and arson. In two counts he was charged with murder in the first degree for the death of the two firemen. In the third count he was charged with arson in the first degree and in the fourth count with arson in the second degree.

At the arraignment the defendant stood mute, and the court directed a plea of not guilty to be entered in his behalf.

The jury returned a verdict of not guilty on the two charges of murder. On the arson charges the defendant was found guilty.

The verdict was returned on May 4, 1939, and on May 6 a motion for a new trial was filed. The motion set forth that the court admitted illegal testimony, and that the verdict was contrary to the law and the evidence. The motion for a new trial was overruled. Judgment was entered on the verdict, and this appeal followed.

Error is specified in overruling defendant's objection to the introduction of a "purported statement obtained in a so-called inquisition by B. M. Newton, chief of the fire division, Department of Inspection and Registration"; and in permitting testimony to be introduced against defendant purportedly obtained by B. M. Newton from defendant, which testimony resulted in compelling defendant to testify against himself.

On the trial the chief of the fire department and other witnesses testified as to the fires, and there was proof as to the injuries and death of the two firemen.

Over the objection of defendant the following statement was introduced in evidence:

"Inquisition held before B. M. Newton, inspector, Department of Inspection and Registration of the state of Kansas, with all the power heretofore conferred upon deputy fire marshals, this 17th day of February, 1939, in Leavenworth, county of Leavenworth, state of Kansas, relative to a certain fire which occurred on the 13th day of February, 1939.

"Wherein certain houses were burned or damaged by fire, the property of Mrs. Wm. Wederbrock, Mrs. Chas. Oldfield, being located near 206 Elm, Leavenworth, Kan. The undersigned being duly sworn, deposes and says: My name is Herbert McCarbrey, I am twenty-five years of age; I reside at 409 Elm street, Leavenworth, Kan. My name is Herbert McCarbrey. Tuesday, February 13, 1939, I left my home at approximately eight o'clock to go to my lady friend's home located at 302 Miami street. I visited with my friend all the evening, leaving her house approximately one a. m. I went out Fourth street to Arch street and up Arch to Fifth. I picked up paper from along the parking and put it at the corner of the Young garage and laid a match to it. I then went up Second to Vine, just what street I went

up I do not remember, and walked through the alley between Elm and Vine. When I got to the garage of Wederbrock's, I think it is that one, but am not positive, I threw a lighted match into the trash at the corner of the garage, at the outside of the garage. I kept walking right on through the alley down home. It is a feeling you cannot describe. I cannot figure it out myself, I have tried—it is a feeling of satisfaction, of something—I do not know what. There have been about eight fires as far as I can go, but I think there might have been more than that. Question by Mr. B. M. Newton, fire marshal: How many fires do you think you have set in the past four or five months? Answer. Ten or twelve, possibly more, possibly less. While I worked at Oakley, Kan., as night clerk in the hotel I did set one fire. In a room on the first floor, right next to the office, practically. In setting these fires I had no intention of destroying property or harming anyone. It was just a satisfaction of some nature that I tried to obtain. Question: Herbert, how long has it been since you first noticed this desire to set fires? Answer: In the last two or three years, I guess. Question: When you were at El Paso, Texas, what did you do? Answer: I drove a truck for my uncle. Question: At any time in El Paso did you set any fires? Answer: No, sir, I did not have any desire for it. I felt different than I do now. Mr. Newton: I have made this statement of my own free will and accord, knowing full well that it is to be used in court against me, and I have been treated with kindness and respect by the officers making the investigation. Question: Is that true, Herbert? Answer: Yes. Signed, Herbert McCarbrey. Subscribed and sworn to before me this 17th day of February, 1939, before B. M. Newton, inspector, Department of Inspection and Registration. Signed, G. M. Stringfellow; signed, Otto Geisler; signed, Walter Reed Gage."

B. M. Newton testified that he was chief in the fire division, Department of Inspection and Registration; that the fire at 206 Elm was on Tuesday morning, February 14, 1939; that he came to Leavenworth on the afternoon of February 16, and started an inquisition "into the affair that occurred here." He testified that: "The police officers and I took Herbert McCarbrey from his home about 9:00 or 9:30 a. m. Friday, February 14, [17]; he was taken to the police station; I got the statement about 4 p. m.; I didn't leave him." Mr. Newton further testified that he questioned Herbert McCarbrey Friday morning, February 17, at the city hall police department; conversation with him was quite lengthy; that he made a statement or confession; Clara Hebling was there in the chief of police's office; the statement was free and voluntary, and that Chief Stringfellow, Chief Geisler and Walter Gage were witnesses to the statement.

From the transcript of the evidence, which we have examined, it appears that the statement of the defendant was taken in shorthand by the witness Clara Hebling. She was called to the police station

in the middle of the afternoon of February 17, 1939. She was not there in the morning. The statement was transcribed in her office. She was not present when the statement was signed and witnessed. She testified:

"Q. Did Mr. McCarbrey dictate the statement? A. Well, a great deal of it is in his own words; some of it in Mr. Newton's words, but they were discussed—the different parts of the statement—were discussed between the two, and that part Mr. Newton dictated to me Mr. McCarbrey heard and concurred with. A great deal of it is what Mr. McCarbrey said."

She further testified the statement appeared to be voluntary on the part of defendant. No force was used.

The three persons who signed the statement of defendant as witnesses—each testified the statement was signed by the defendant voluntarily—that no force was used and no promises made.

Defendant contends that the judgment of the court will deprive him of his liberty without due process of law, and that he was compelled to be a witness against himself, in violation of the fifth amendment to the constitution of the United States, and in violation of section 10 of the bill of rights of the constitution of the state of Kansas.

Defendant was convicted of arson in the first degree under G. S. 1935, 21-581, and of arson in the second degree under section 21-582. The statement of defendant, introduced in evidence, was taken at an inquisition under the provisions of G. S. 1935, 31-203.

In *State v. Harris,* 103 Kan. 347, 175 Pac. 153, the defendant was charged with arson. An inquisition was held under chapter 198, Laws 1917, now G. S. 1935, 31-203. Every question urged on this appeal was raised in that case. It was there held, as stated in the syllabus:

"The testimony of a witness voluntarily given in an inquisition to determine the origin of a fire, held by the state fire marshal or county attorney under an act relating to protection against fire (Laws 1917, ch. 198), may be used so far as relevant in a prosecution for arson subsequently brought against the witness.

"Such testimony is not deemed to be involuntary because given in response to a subpoena, or because a witness refusing to appear or to testify is subject to punishment, nor yet because of the statutory provision that no persons shall be present at the inquisition except the officers and that the testimony taken shall not be disclosed to anyone else.

"In such an inquisition a witness is at liberty to claim his constitutional privilege of refusing to give answers that would criminate himself, the same as in an ordinary action, and if he does not claim the privilege, but thereafter, in a prosecution against him, takes the stand and gives testimony in his own

behalf, he may be cross-examined as to statements and admissions made in an inquisition before the fire marshal." (Syl. ¶¶ 1, 2, 3.)

See, also, *State v. Backstrom*, 117 Kan. 111, 230 Pac. 306; *State v. Ralston*, 131 Kan. 138, 289 Pac. 409.

In *State v. Taylor*, 36 Kan. 329, 333, 13 Pac. 550, it was held not error to admit the testimony of the defendant taken at the coroner's inquest, reduced to writing and signed by the defendant, because it did not appear that the testimony at the inquest was not voluntarily given. In discussing this question, the court said:

". . . The question whether the court below erred or not in permitting this testimony to be introduced, depends entirely upon the question whether it was voluntarily given before the coroner's inquest or not. It was admitted in evidence under that rule of evidence which permits a party's own admissions or confessions, his own declarations, to be introduced in evidence against him; and if it was voluntarily given before the coroner's inquest no error was committed in receiving it on the trial; but if it was given under duress, if the defendant was compelled by subpoena or otherwise to disclose it before the coroner's inquest, then of course the court below should not have permitted it to be introduced on the trial. Now, from anything appearing in the record, we think the testimony was voluntary. There does not appear to have been any subpoena issued. Nor does it appear that any other kind of compulsion was used. Nor does it appear that any questions were asked the defendant at the coroner's inquest; but it would seem from the paper containing this testimony that he voluntarily made his own statement, that it was given in narrative form and reduced to writing, and then that he signed the same. . . ."

In *State v. Finch*, 71 Kan. 793, 795, 81 Pac. 494, the principal complaint of the defendant was the admission of a statement made by the defendant at the coroner's inquest. In disposing of this contention, the court stated:

"Like others, the defendant was subpoenaed as a witness to testify at the inquest as to the cause of Brooks's death. For aught that appears, he may have been anxious and swift to testify. There is not a hint in the record that he was led to testify through any inducement of promised favor, or by reason of any fear, menace or duress. Ordinarily, all that a defendant has said pertinent to the subject of inquiry may be received in evidence against him. The exceptions to this rule are when admissions have been extracted from him by means of promises or threats, or where testimony given or statements made have been compulsory or involuntary. The test of admissibility in this and like cases is, Were the statements made voluntarily and without compulsion? In this instance they were made in an inquiry where the defendant was a witness and not a party, and where he might have claimed the privileges of a witness. He was not in custody, nor had any accusation been made against him. Indeed, it does not appear that Brooks's death was then thought to have been caused by any criminal act. The constitutional limita-

tion that no person shall be a witness against himself should be broadly interpreted so as to give full protection to one accused of crime, but neither the constitutional limitation nor the rule of the common law requires the exclusion of statements or testimony voluntarily given. An unsworn confession, made to an officer by one charged with crime and under arrest, may be given in evidence against him, providing it was freely and voluntarily made. The fact that a statement with reference to the cause of a death is made under oath by one not accused nor in custody can hardly be less reliable. If the testimony that defendant gave was incriminating, was it inadmissible merely because he was subpoenaed as a witness and gave his testimony at a formal inquest before the coroner? There was no compulsion to testify, unless the mere fact that he was subpoenaed to give his testimony can be so regarded. There is considerable diversity of opinion in the cases as to the admission of such testimony, and these may be found compiled and classified in Wigmore on Evidence (vol. 1, § 851, and the appended note)."

The record shows that the state inspector and two other witnesses saw the defendant sign the statement, and testified that it was signed voluntarily and without threats.

Finding no error in the record, the judgment is affirmed.

ALLEN, J., dissents.