NOT DESIGNATED FOR PUBLICATION

No. 113,091

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CALVIN JOHNSTON, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Grant District Court; CLINTON B. PETERSON, judge. Opinion filed July 1, 2016.
Affirmed.

*Brian James Yearout,* legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender
Office, for appellant.

*Lynn Koehn*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., POWELL and GARDNER, JJ.

*Per Curiam*:  Calvin Johnston, Jr., appeals from a verdict finding him guilty of
having made a criminal threat. He challenges the giving of an instruction to the jury and
the admission of certain evidence. Finding no reversible error, we affirm.

*Procedural background*

In 2014, while in prison, Calvin Johnston became upset after meeting with his
court-appointed attorney and told Blake Richter Garcia, the jailer, that he would kill his

1

own father and the county prosecutor in the case who had brought the charges against him, Jessica Akers. Johnston testified that he was upset because he felt that his defense attorney wanted him to plead guilty, despite his professed innocence, to charges of aggravated kidnapping, aggravated battery, and aggravated assault on his father.

The jailer reported this incident to his supervisor, Detective Jason Brown, who met with the prosecutor and told her of Johnston's statements. The detective observed that the prosecutor was "quite shaken." The detective did not, however, tell Johnston's father about the statements.

Johnston was then charged with criminal threat of the prosecutor. The evidence at trial consisted largely of the jailer's testimony that Johnston had threatened to kill his father and the prosecutor, and Johnston's testimony denying he had done so. The jailer testified that Johnston said, "As soon as I get out of here, I'm going to go kill my dad and then come back here and kill that bitch Jessica Akers." When Johnston testified, he admitted that he had made some statements regarding his father but denied he had threatened to kill him. He also testified, "I never said I would harm [the prosecutor]." Although the encounter between Johnston and the jailer was videotaped, without audio, the footage had been recorded over by the time of trial.

Jury deliberations began at 9:10 a.m. At 1:20 p.m., the jury informed the district court that it was deadlocked. The court then made the following inquiry:

> "THE COURT: Okay, I've got a couple of questions for you. I don't want you to tell me which way you're voting on this, but what is the vote split?
>
> "[Jury Foreman]: We're looking nine to three.

"THE COURT: Nine to three. And if I order you to return and continue deliberating and ask that you reread all the instructions, would it be more convenient for you if I make additional copies so that everybody has their own copies?

"[Jury Foreman]: Not necessarily. The copies, we've all been reading it out loud and have copies.

"THE COURT: Okay. And you've all finished lunch; is that correct?

"[Jury Foreman]: Yes, Sir. And thank you, by the way, for lunch.

"THE COURT: You're welcome. What I'm going to do is send the clerk in to get some of the pizza boxes and the trash. We will get that cleaned up and take a break and I'm going to order that you return and see if you can't reach a verdict. Thank you."

The jury returned a guilty verdict 33 minutes later.

*Were the trial court's instructions coercive?*

Johnston first contends that the trial court's instructions to the jury before and after the foreperson told the court the jury was deadlocked were coercive.

A. *Standard of Review*

Johnston concedes that defense counsel did not object to the content of the instruction given, to the district court's inquiry about the jury's vote, or to the district court's order that the jury continue deliberations. As a general rule, a party cannot raise an issue on appeal where no contemporaneous objection was made and where the trial court did not have an opportunity to rule. *State v. Kirtdoll*, 281 Kan. 1138, 1148, 136 P.3d 417 (2006). Johnston contends that this case is an exception because it raises a constitutional issue of due process and right to jury trial. We reject that assertion.

3

The failures to object limit our review—we determine only if these matters were clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *Kirtdoll*, 281 Kan. at 1150. An instruction is clearly erroneous when "'the reviewing court is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013) (quoting *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 [2012]).

B. *Analysis*

Johnston first argues that the district court erred in giving Instruction 10, which the parties agree is an *Allen*-type instruction. See *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). That instruction, which is PIK Crim. 4th 68.140 with slight modifications, was included in the instructions read by the court at the end of the trial. Johnston did not object. No form of this instruction was given to the jurors after they told the court they were deadlocked.

Under a clear error analysis, this argument has no merit. The Kansas Supreme Court has held that it is not error to give an *Allen*-type instruction to the jury prior to deliberations. *State v. Roadenbaugh*, 234 Kan. 474, 482-83, 673 P.2d 1166 (1983). Nor is doing so coercive. *State v. Oswald*, 197 Kan. 251, 260-61, 417 P.2d 261 (1966) (finding an *Allen*-type instruction given at the time of the original charge removes all questions with regard to the coercive effect of the instruction).

Johnston next contends that the jury's verdict was coerced. In support of this assertion, he notes:  (1) the judge inquired of the jury what the numeric split was; (2) when the jury announced it was deadlocked, the judge ordered the jurors to "see if you can't reach a verdict" and did not tell them of any option besides reaching a verdict; and (3) the jury returned a verdict 33 minutes after being so ordered.

4

As to the judge's inquiry into the split, we find no error. The Kansas Supreme Court has found "no impropriety" in a trial judge's inquiry into a jury split because "there was no admonition urging an early verdict, nor anything approaching coercion." *State v. Finch*, 71 Kan. 793, 799, 81 P. 494 (1905). *Finch* held:

> "It is not error for a court to recall a jury, after it has deliberated for a time, to inquire as to the probability of an agreement upon a verdict . . . nor to ascertain from the foreman how the jury were divided in point of numbers, without indicating whether they were for or against the defendant." 71 Kan. 793, Syl. ¶ 5.

Because that is precisely what the judge did in this case, we find no impropriety in his having done so.

As to the judge's statements to the foreman, Johnston mischaracterizes the conversation. Johnston states that the "judge told the jurors to re-read the instructions— including instruction 10." But the transcript shows that the court did not order the jury to reread the instructions. Instead, the court asked, "And *if* I order you to return and continue deliberating and ask that you reread all the instructions, would it be more convenient for you if I make additional copies so that everyone has their own copies?" (Emphasis added). When the foreman replied negatively, the court ordered the jury to "take a break and I'm going to order that you return and see if you can't reach a verdict." Nothing in that statement ordered the jury to reach a verdict or impinged on the jurors' exercise of independent will and judgment. See *Oswald*, 197 Kan. at 260-61.

We next address the jury's swift rendering of a verdict after the judge's order. Where, as here, no error was made leading into the resumed deliberations, we find the shortness of time of the additional deliberations (33 minutes) insufficient to show any coercion. Additionally, the court polled the jury at the conclusion of the trial, and each

member responded that the verdict read was his/her verdict. Under the circumstances of record, Johnston has shown no coercion and no error in the court's inquiry of or instructions to the jury.

*Did the trial court err in admitting evidence of the charges Johnston was jailed for?*

Johnston next contends that the district court erred in admitting testimony about the specific crimes for which he was in jail at the time he made the criminal threat—namely, aggravated kidnapping, aggravated battery, and aggravated assault, based on an incident involving his father.

We first provide some background. At a conference outside of the hearing of the jury, the State moved to admit K.S.A. 2015 Supp. 60-455 evidence of defendant's prior criminal charges. During that conference, in an extended colloquy with the court, the State explained that it wanted to introduce the prior charges "to explain the state of mind of [the jailer], the detective, and [the prosecutor]" and, specifically, to explain why they took the threat seriously. The State asked the district court to make specific findings on various factors. The court took a recess, but upon return it denied the State's motion because the State had not complied with the 10-day notice requirement of K.S.A. 2015 Supp. 60-455(e).

At trial, the district court admitted, over defense counsel's objection, evidence that Johnston was in jail because he had been charged with aggravated kidnapping, aggravated battery, and aggravated assault, apparently finding that Johnston's trial testimony had opened the door to its admission. The court found the evidence to be relevant, but it did not expressly weigh its probative value against its prejudicial effect, nor did it give any limiting instruction at the time the evidence came in.

6

A. *Standard of Review*

We look to *State v. Everett* for our standard of review:

"A multistep analysis applies to issues regarding the admission of evidence and separate standards of appellate review apply to each analytical step. *State v. Shadden,* 290 Kan. 803, 817, 235 P.3d 436 (2010). Initially, a court must determine if the evidence is relevant. Then the court must determine the rules of evidence that may apply to the admission of the evidence and decide if the evidence is admissible under those rules and if its probative value is substantially outweighed by the potential for prejudice. *Shadden*, 290 Kan. at 817-18." *State v. Everett* 296 Kan. 1039, 1044, 297 P.3d 292 (2013).

When the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

B. *Analysis*

The evidence at issue involves "prior bad acts" evidence as described in K.S.A. 2015 Supp. 60-455. The proper inquiry for this court is clearly set forth in *Gunby*, where our Supreme Court held that all K.S.A. 60-455 evidence "must be subjected to the same sort of explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, and prophylactic limiting instruction . . . ." 282 Kan. at 57. Failure to do so is error.

The record does not show that the district court engaged in the analysis required by our Supreme Court in *Gunby*. But such error does not automatically require reversal. We must determine whether the prejudicial effect of the evidence requires a new trial. See 282 Kan. at 57. Reversal is required only where the erroneous admission of evidence

7

affects the trial and denies the defendant substantial justice. *State v. Engelhardt*, 280 Kan. 113, 130, 119 P.3d 1148 (2005).

In determining whether the prejudicial effect warranted a new trial for Johnston, we first view the context of the admission of the challenged evidence. Defense counsel acknowledged the jury needed to know that Johnston was in jail at the time he made the statements, but he contended the specific underlying crimes that had placed Johnson in jail were irrelevant. Under direct examination, Johnston testified that he had been upset at the time he allegedly made the threat because the prosecutor and his defense attorney wanted him to "plead guilty to these charges that they kept acting like [he] was guilty of." The State characterized this as "opening the door," and the district court apparently agreed.

During cross-examination of Johnston, the State asked what charges Johnston was talking about. After defense counsel's objection on relevance was overruled, Johnston testified that the charges were aggravated kidnapping, aggravated battery, and aggravated assault. During redirect, Johnston testified that he had not been found guilty of those crimes. On recross and over a relevancy objection, the State elicited that the reason the charges had been dropped was because Johnston's father (the alleged victim of the charges) would not testify against him. Johnston then stated that he had not had any contact with his father "since the incident occurred."

The Kansas Supreme Court held that K.S.A. 60-455 evidence admitted because a defendant opens the door must nevertheless be evaluated under the standards of *Gunby*. Evidence admitted in rebuttal to other evidence under an "'open the door' rule" is not an exception permitting evidence of other crimes to be admitted independently of K.S.A. 60-455. *Everett*, 296 Kan. at 1044-45. Accordingly, the district court should have made explicit relevance inquiries, weighed the probative value against its prejudicial effect, and

8

if the evidence was admissible, instructed the jury about the limited purpose for which it could use this evidence.

We find the challenged evidence was relevant to show why the jailer and others involved took Johnston's statements seriously instead of dismissing them as innocent rantings. Johnston has not shown that the jury's knowledge of the charges for which he was jailed prejudiced him more than the jury's knowledge of the fact that he was in jail. We reach this conclusion because the jury also knew that the charges against Johnson had been dismissed; thus, the jury knew Johnson was not guilty of those crimes. Although this case turned on witness credibility, Johnston's prior charges were not crimes of dishonesty; therefore, admitting evidence of the charges did not mar his credibility. We find that the charges for which Johnston was being held were relevant to his charge of criminal threat, and although somewhat prejudicial, were not unduly so.

We next review the court's limiting instruction given at the end of the trial. In charging the jury, the court included a limiting instruction, requested and approved by defense counsel, which told the jurors not to consider the challenged testimony. It stated:

> "You have heard testimony that the defendant was in jail when the present crime charged occurred. You, also, heard testimony tending to show that defendant committed crimes other than the present crime charged.
>
> You must not draw any inferences of guilt from these facts and you must not consider these facts in arriving at a verdict."

Although limiting instructions usually state a specific purpose for which the jury can consider challenged evidence and are given at the time the challenged evidence is admitted, this instruction actually favored Johnston by telling the jury that it could not consider the fact he was in jail or the crimes with which he had been charged in reaching its verdict. As a reviewing court, we presume the jury followed the limiting instruction.

9

See *State v. Sisson*, 302 Kan. 123, 131, 351 P.3d 1235 (2015); *State v. Barber*, 302 Kan. 367, 378, 353 P.3d 1108 (2015). Accordingly, the instruction as given cured any prejudicial effect of such evidence. Thus, the erroneous admission of this evidence did not affect the outcome of the trial nor did it deny the defendant substantial justice. See *Engelhardt*, 280 Kan. at 130.

*Did the errors cumulatively deprive Johnston of a fair trial?*

Johnston next contends that cumulative errors denied him a fair trial. We have found only one error, so we do not apply this doctrine. See *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010).

Affirmed.